# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

LIONEL HARRIS,

        **Plaintiff,**

                                **Civil Action 2:16-cv-888**

        **v.**                          **Judge James L. Graham**

                                **Chief Magistrate Judge Elizabeth P. Deavers**

AARON SOWERS, *et al.*,

        **Defendants.**

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, Lionel Harris, an Ohio inmate who is proceeding without the assistance of counsel, brings this civil rights action under 42 U.S.C. § 1983 against Defendants, employees of Madison Correctional Institution ("MaCI"). This matter is before the Court for consideration of several pending motions. (ECF Nos. 132, 133, 139, 142, 144, 154.) For the reasons that follow, Plaintiff's Motion to Compel (ECF No. 132), Plaintiff's Motion to Disqualify Counsel (ECF No. 133), and Plaintiff's Motion for Sanctions (ECF No. 144) are **DENIED** and Plaintiff's Motion to Strike Summary Judgment Affidavit (ECF No. 154) is **DENIED AS MOOT**. It is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED IN PART and DENIED IN PART** and that Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**.

### I.

At all times relevant to the Verified Amended Complaint ("Am. Compl.") (ECF No. 57), Plaintiff was incarcerated at MaCI.[1] (*See generally* Am. Compl.) Plaintiff, an African-American

---

[1] Plaintiff is currently incarcerated at North Central Correctional Institution.

inmate, alleges that Defendants Aaron Sowers (MaCI mailroom screener), Melanie Futz (MaCI's

secretary / notary public), Jacob Hays (MaCI mailroom screener),[2] Julia Chamberlin (MaCI

Lieutenant),[3] Cynthia Ricker (MaCI financial associate supervisor), Mary McCrary (MaCI

mailroom screener),[4] and Michelle Lovette (MaCI cashier)[5] violated his constitutional rights in

connection with their handling of and/or destruction and/or theft of his mail and his use or

attempted use of the prison grievance system.  (*See generally* Am. Compl.)  The Court addresses

in turn Plaintiff's claims and relevant evidence when addressing the various motions.

## II.

Plaintiff has filed a Motion to Compel, seeking to compel responses to discovery requests

served in March and May 2019.  (ECF No. 132.)  Defendants oppose the Motion to Compel

(ECF No. 135; *see also* ECF No. 137), and Plaintiff has filed a reply memorandum (ECF No.

146).

---

[2] Plaintiff identified this Defendant as "Mr. Hayes."  (Am. Compl., caption.)  In moving for summary judgment, Defendants identify him as "Jacob Hays."  (ECF No. 139 at PAGEID # 1427.)  For ease of reference, the Court will refer to this Defendant by Defendants' spelling.
[3] Plaintiff identified this Defendant as "Mrs. Chamberlain."  (Am. Compl., caption.)  In moving for summary judgment, Defendants identify her as "Julia Chamberlin."  (ECF No. 139 at PAGEID # 1427.)  For ease of reference, the Court will refer to this Defendant by Defendants' spelling.
[4] Plaintiff originally identified this Defendant as "Mrs. McQueary."  (Original Complaint, caption (ECF No. 7); Am. Compl. caption.)  More than a year after attempting to effect service on Mrs. McQueary, Defendants later clarified that this Defendant is Mary McCrary.  (ECF No. 73; *see also* ECF No. 74 (addressing Defendants' role in the delay in effecting service of process on Defendant McCrary).)  For ease of reference, the Court will refer to this Defendant by Defendants' spelling.
[5] In early 2017, Defendants misidentified this Defendant as Randall Hawk.  (ECF Nos. 17 and 18.)  After Defendants served discovery responses identifying the proper Defendant as Michelle Lovette, the Court substituted Defendant Lovette for Mr. Hawk and dismissed him from the action on November 11, 2017.  (ECF No. 52.)

**A.      Standard**

"District courts have broad discretion over docket control and the discovery process."

*Pittman v. Experian Info. Sol., Inc*., 901 F.3d 619, 642 (6th Cir. 2018) (citations omitted). "'It is

well established that the scope of discovery is within the sound discretion of the trial court.'" *Id*.

(quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). Federal Rule of Civil

Procedure 26(b) identifies the acceptable scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 33(a)(2) ("An interrogatory may relate to any

matter that may be inquired into under Rule 26(b)."), 34(a) ("A party may serve on any other

party a request within the scope of Rule 26(b)[.]"). In short, "a plaintiff should have access to

information necessary to establish her claim, but [] a plaintiff may not be permitted to 'go

fishing'; the trial court retains discretion." *Anwar v. Dow Chem. Co*., 876 F.3d 841, 854 (6th

Cir. 2017) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir.

2007)); *see also Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd*., 784 F.3d 311, 320–

21 (6th Cir. 2015) ("In sum, '[a]lthough a plaintiff should not be denied access to information

necessary to establish her claim, neither may a plaintiff be permitted to 'go fishing' and a trial

court retains discretion to determine that a discovery request is too broad and oppressive.'"

(quoting *Surles ex rel. Johnson*, 474 F.3d at 305)).

"[T]he movant bears the initial burden of showing that the information is sought is

relevant." *Prado v. Thomas*, No. 3:16-cv-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19,

2017) (citing *Gruenbaum v. Werner*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). If the movant

makes this showing, "then the burden shifts to the non-movant to show that to produce the

information would be unduly burdensome." *Id*. (citing *O'Malley v. NaphCare, Inc*., 311 F.R.D.

461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015

amendment (stating that a party claiming undue burden or expense "ordinarily has far better

information—perhaps the only information—with respect to that part of the determination" and

that a "party claiming that a request is important to resolve the issues should be able to explain

the ways in which the underlying information bears on the issues as that party understands

them").

Finally, a party moving for an order compelling discovery must "include a certification

that the movant has in good faith conferred or attempted to confer with the person or party

failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R.

Civ. P. 37(a); *see also* S.D. Ohio Civ. R. 37.1 ("[M]otions . . . relating to discovery shall not be

filed in this Court . . . unless the parties have first exhausted among themselves all extrajudicial

means for resolving the differences."). Here, Plaintiff includes an affidavit certifying he made a

good faith effort to resolve this dispute by corresponding with defense counsel. (ECF No. 132 at

PAGEID # 1356.) The Court is satisfied that Plaintiff satisfies this prerequisite.

Plaintiff's Motion to Compel does not identify the responses to the specific discovery

requests he seeks an order compelling. (*See generally* ECF No. 132.) However, after reviewing

the attached Exhibit C (ECF No. 132-2 (copy of Plaintiff's objections to Defendants' discovery

responses) and Defendants' opposition (ECF No. 135), the Court understands that the disputed

discovery requests are Document Request Nos. 2, 3, 5, 7, and 9, served in March 2019, and four

discovery requests served in May 2019.  The Court addresses these requests in turn.

**B.    Discovery Request No. 2 (March 2019)**

This request seeks "[a]ll documents that refer to allegations of misconduct or other

improper conduct by Defendants Ricker, Lovette, Hayes, McCrary, Chamberlin, Fultz, and

Sowers whether such allegations are made by an inmate or by a member of the prison staff."

(ECF No. 132-2 at PAGEID # 1360.)  Defendants respond as follows:

> **OBJECTION:**  Defendants object to this discovery request to the extent that it is
> beyond the scope of Plaintiff's complaint and allegations.  Further, Defendants
> object to the extent that the information sought is confidential.  Inmates are not
> allowed to possess complaints submitted by other inmates because they are
> confidential.  See Ohio Admin. Code 5120-9-31.  Additionally, Defendants object
> to the extent that Plaintiff's request is irrelevant.  Plaintiff seeks documents wholly
> unrelated to his case.
>
> **RESPONSE:**  Your grievances and complaints were provided in a previous
> discovery response.  See documents Bates Stamped 0009-0051.

(*Id*.)

Plaintiff contends that Defendants' employment files are discoverable and are relevant to

the claims.  (ECF No. 132-3; ECF No. 146 at PAGEID ## 1625–26.)  The Court disagrees.  The

Court is not persuaded that this overbroad request is relevant to whether Defendants took the

actions described in the First Amended Complaint.  *See Brooks v. Yates*, No. 1:09-cv-922, 2011

WL 6257684, at *1 (S.D. Ohio Dec. 15, 2011) (sustaining correction officers objection to

inmate's request for production of officer's disciplinary records on grounds of relevancy and

overbreadth where inmate sought records to demonstrate that the officers had a history of violent

acts).  While Plaintiff contends that "Defendants have a record of dishonesty in this matter[,]"

ECF No. 146 at PAGEID # 1625, Plaintiff is not permitted to "go fishing[.]"  *Anwar*, 876 F.3d at

854.  Finally, even if the requested information had some relevance, Plaintiff has not persuaded

this Court that this degree of relevance outweighs the security concerns triggered in the production of such records in this case. *See Perry v. Rousseau*, No. 18-cv-12914, 2019 WL 3561920, at *3 (E.D. Mich. Aug. 6, 2019) (denying prisoner plaintiff's motion to compel where the defendants' disciplinary records "could contain information not within the general knowledge of the prison population, such as specific prison policies or protocols violated by an employee, the disclosure of which could undermine the security of the prisons" and "could also contain information about Defendants that could make them vulnerable to prisoner threats or manipulation. Plaintiffs' [sic] general assertion of relevance does not outweigh the security and safety concerns associated with production of Defendants' disciplinary records"). Accordingly, as it relates to Plaintiff's Discovery Request No. 2 (March 2019), the Motion to Compel (ECF No. 132) is **DENIED**.

## C.    Discovery Request No. 3 (March 2019)

Plaintiff requested "[a]ny Video footage of the Ma.C.I. administration building on 02/09/16 that specifically shows defendant Fultz entering and/or exiting the building — and access to equipment to view the footage." (ECF No. 132-1 at PAGEID #1358.) Defendants responded that "[n]o video footage of Defendant Sowers entering the MaCI administration building on February 9, 2016 exists." (ECF No. 132-2 at PAGEID # 1361.) Plaintiff objected to Defendants' response because he asked for video footage regarding Defendant Fultz, not Defendant Sowers. (ECF No. 132-3 at PAGEID # 1365.)

Defendants now clarify as follows:

> The video footage Plaintiff requested was not retained under the retention policy. Video footage is maintained for a minimum of fourteen (14) days unless specifically designated for retention under ODRC policy 09-INV-011. Any video from February 8 or 9, 2016 was not specifically designated for retention prior to its

> deletion. Accordingly, Plaintiff's motion must be denied as to this request because
> no video footage of either day exists.

(ECF No. 135 at PAGEID # 1402.) Defendants have therefore represented the video footage

does not exist. The Court cannot compel Defendants to produce something that does not exist.

*Miller v. Experian Info. Sol., Inc.*, No. 3:13-cv-90, 2014 WL 5513477, at *2 (S.D. Ohio Oct. 31,

2014) (collecting cases establishing that "[p]arties have no duty to create documents simply to

comply with another party's discovery request."); *see also Brown v. Warden Ross Corr. Inst.*,

No. 2:10-cv-822, 2011 WL 1877706, at *5 (S.D. Ohio May 16, 2011) ("Defendants have

represented that they do not have the information Plaintiff seeks. The Court cannot require them

to produce what they do not have."). Accordingly, as it relates to Discovery Request No. 3

(March 2019), the Motion to Compel (ECF No. 132) is **DENIED**.

**D.      Discovery Request Nos. 5 and 7 (March 2019)**

Discovery Request No. 5 seeks "[a]ny and all documents produced by Ma.C.I. staff

members from the dates of 01/01/2016 to present that was included in Plaintiff's master file."

(ECF No. 132-1 at PAGEID # 1358.) Defendants respond as follows:

> **OBJECTION:** Defendants object to this discovery request to the extent that it is
> overly broad, vague, and ambiguous. Additionally, Defendants object to the extent
> that the documents requested are irrelevant to Plaintiff's Complaint. Defendants
> object to this discovery request to the extent that it may threaten institutional
> security.
>
> **RESPONSE:** Without a more specific request, Defendants are unable to provide
> documents. Moreover, information within a "master file" must be evaluated by
> staff to ensure the release of information will not endanger either the inmate or
> others, and is not prohibited by law or statute. However, Plaintiff can kite his unit
> manager to review his master file. See ODRC Policy 07-ORD-13. A copy of this
> policy is attached to this response.

(ECF No. 132-2 at PAGEID # 1361.)

Discovery Request No. 7 seeks Plaintiff's "unit files from 01/01/2016 to present." (ECF No. 132-1 at PAGEID # 1358.) Defendants respond as follows:

> **OBJECTION:** Defendants object to this discovery request to the extent that it is overly broad, vague, and ambiguous. Additionally, Defendants object to the extent that the documents requested are irrelevant to Plaintiff's request. Defendants object to this discovery request to the extent that it may threaten institutional security.

> **RESPONSE:** Without a more specific request, Defendants are unable to provide documents. Moreover, information within a "master file" must be evaluated by staff to ensure the release of information will not endanger either the inmate or others, and is not prohibited by law or statute. However, Plaintiff can kite his unit manager to review his master file. See ODRC Policy 07-ORD-13. A copy of this policy is attached to this response.

(ECF No. 132-2 at PAGEID # 1361–62.)

Plaintiff complains that "the discovery rules state that a party must provide information and documents it possesses, regardless of who else possesses that information." (ECF No. 132-3 at PAGEID # 1365; ECF No. 146 at PAGEID ## 1627–28.) Plaintiff also represents that he contacted his unit staff as instructed to obtain this information but did not receive the requested information because it could not be located. (ECF No. 146 at PAGEID ## 1627–28.) Plaintiff further contends that the "files may also reveal whether or not it was defendant Fultz [instead of Defendant Ricker as alleged in the Amended Complaint] who reassigned Plaintiff's job assignment in retaliation for using the grievance procedure[.]" (*Id*. at PAGEID # 1624–25.)

Defendants note that Plaintiff takes issue with only a portion of their response about securing the requested information through alternative means and does not address the other portions of their objection and response. (ECF No. 135 at PAGEID # 1403–04.) Defendants explain that they are not resistant to providing information but that the master files contain a large amount of information and that the request, as presently formulated, is overly broad, vague,

and ambiguous and seeks information that includes matters unrelated to the present lawsuit and "could potentially threaten institutional security." (*Id*.)

Defendants' position is well taken. General requests for "[a]ny and all documents" placed in Plaintiff's master file from January 1, 2016 to the present and "unit files", without any further specification or limitation, are vague and broad and therefore not proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1); *see also Anwar*, 876 F.3d at 854; *Superior Prod. P'ship*, 784 F.3d at 320–21. For these reasons, as it relates to Discovery Request Nos. 5 and 7 (March 2019), as presently formulated, the Motion to Compel is **DENIED WITHOUT PREJUDICE**.

**E.      Discovery Request No. 9 (March 2019)**

Plaintiff also seeks "[d]isciplinary records from date of hire to present of defendants Sowers, Fultz, Chamberlin, Hayes, Ricker, Lovette and McCrary. Redacted as necessary for security purposes only." (ECF No. 132-1 at PAGEID # 1358.) Defendants objected to "this discovery request to the extent that it is irrelevant and solely intended to harass and/or burden Defendants." (ECF No. 132-2 at PAGEID # 1362.)

As previously discussed in connection with the request for the Defendants' employment files, the Court is not persuaded that this overbroad request is relevant to whether Defendants took the actions described in the First Amended Complaint. *See Brooks*, 2011 WL 6257684, at *1. Plaintiff is not permitted to "go fishing[.]" *Anwar*, 876 F.3d at 854. Finally, even if the requested information had some relevance, Plaintiff has not persuaded this Court that this degree of relevance outweighs the security concerns triggered in the production of such records in this case. *See Perry*, 2019 WL 3561920, at *3. Accordingly, as it relates to Plaintiff's Discovery

Request No. 9 (March 2019), the Motion to Compel (ECF No. 132) is **DENIED**.

**F.      Discovery served in May 2019**

Plaintiff complains that he served a second set of discovery requests on May 2, 2019, and that as of the date of his Motion to Compel (June 13, 2019), he had not received a response to these requests.  (ECF No. 132.)  Defendants, however, represent that they did not receive these requests until May 22, 2019, and therefore the Motion to Compel as to these requests is premature.  (ECF No. 135 at PAGEID # 1405; ECF No. 137.)  Defendants go on to represent that they are completing a final response to one of the requests and would send responses to all the May 2019 requests once they are received, obviating the need for an order compelling compliance.  (ECF No. 135 at PAGEID # 1405.)  While Plaintiff represented in his reply in June 2019 that he had not yet received the responses (ECF No. 146 at PAGEID ## 1628–29), Defendants have represented to the Court that those responses were forthcoming and, indeed, appear to have been served on Plaintiff in July 2019.  (*See* ECF No. 144-1 (copy of letter dated July 22, 2019, from defense counsel addressed to Plaintiff enclosing, *inter alia*, responses to the May 2019 discovery requests).)  Based on this record, the Court agrees that an order compelling Defendants to produce these responses is not necessary.  Accordingly, as it relates to Plaintiff's May 2019 discovery requests, the Motion to Compel (ECF No. 132) is **DENIED**.

In sum, Plaintiff's Motion to Compel (ECF No. 132) is **DENIED** consistent with the foregoing.

## III.

Plaintiff has also filed a Motion to Disqualify Defense Attorney (ECF No. 133) and a Request for Sanctions (ECF No. 144).

**A.      Motion to Disqualify Defense Counsel (ECF No. 133)**

Plaintiff seeks to disqualify Defendants' counsel, Attorney Byron D. Turner, "because he shall be called to testify on behalf of the Plaintiff and defense counsel's testimony will be prejudicial to his clients – defendant Fultz and potentially defendant Sowers."  (ECF No. 133 at PAGEID # 1375.)  Plaintiff goes on to point to perceived inconsistencies/contradictions in Defendants' discovery responses, particularly related to response/s related to Defendant Fultz and the existence of video footage.  (*Id*. at PAGEID ## 1376–78.)  Defendants, however, disagree that disqualification is appropriate, explaining that as to Defendant Fultz's discovery responses regarding video footage, there is no contradiction.  (ECF No. 136 at PAGEID ## 1407–08.)  Defendant further explains that he was not being deliberately evasive in the relevant discovery responses and that an administrative and typographical error occurred but that the response was the same that no video footage exists.  (*Id*. at PAGEID # 1408.)  In reply, Plaintiff insists that Defendant Fultz has been dishonest in her discovery responses and that he intends to call Attorney Turner as a witness in this case.  (ECF No. 145.)

Plaintiff's arguments are not well taken.  "A court should only disqualify an attorney 'when there is a reasonable possibility that some specifically identifiable impropriety' actually occurred."  *Wellman v. Supreme Court of Ohio*, No. 18-3260, 2018 WL 9651499, at *1 (6th Cir. 2018) (quoting *Moses v. Sterling Commerce (Am.), Inc*., 122 F. App'x 177, 183 (6th Cir. 2005)). After carefully reviewing the record and arguments of the parties, the Court is not persuaded that there is a "reasonable possibility that some specifically identifiable impropriety actually occurred."  *Wellman*, 2018 WL 9651499, at *1 (internal quotation marks omitted).  Accordingly, Plaintiff's Motion to Disqualify Defense Counsel (ECF No. 133) is **DENIED**.

**B.       Request for Sanctions (ECF No. 144)**

In seeking sanctions, Plaintiff contends that Defendants failed to timely serve Plaintiff with copies of their briefs opposing Plaintiff's Motion to Compel and Motion to Disqualify counsel.  (ECF No. 144.)  Plaintiff complains Defendants purposely served him outside of rule, "knowing full well" that Plaintiff was required to reply within fourteen (14) days.  (*Id.* at PAGEID ## 1611–12.)  Plaintiff asks that the Court impose a $1000 monetary penalty on Defendants to discourage future non-compliance.  (*Id.* at PAGEID # 1613.)

In response, Defendants contend that they did timely mail the relevant responses but that the envelope containing these responses was returned to them in the mail.  (ECF No. 150.) Specifically, Defendants present a copy of an envelope addressed to Plaintiff that reflects that the envelope was returned to Defendants with the note "No Mail Receptacle, Unable to Forward." (ECF Nos. 150, 151.)  Defendants explain that they do not know why the United States Postal Service was unable to deliver the mail on the initial attempt and point out that Plaintiff suffered no procedural or monetary harm because the Court accepted his responsive filings.  (ECF No. 150 at PAGEID # 1642.)  Plaintiff has not filed a reply to Defendants' response.

Defendants' arguments are well taken.  The uncontroverted evidence reflects that the delay in Plaintiff receiving their responses was a result of the United States Postal Service and not a result of Defendants' attempts to undermine Plaintiff in this litigation.  Moreover, the Court agrees that Plaintiff has suffered no harm as the Court permitted him to file reply memoranda out of rule.  (ECF No. 147.)  Based on this record, there is no evidence of sanctionable conduct on the part of the Defendants.  For these reasons, Plaintiff's Request for Sanctions (ECF No. 144) is **DENIED**.

# IV.

**A.     Summary Judgment Standard**

Defendants move for summary judgment on all Plaintiff's claims and Plaintiff moves for summary judgment on some of his claims.  (ECF Nos. 139, 142.)  Defendants and Plaintiff oppose the other's motions.  (ECF Nos. 152, 155.)  While Plaintiff filed a reply memorandum in support of his motion for summary judgment (ECF No. 160), Defendants did not file a reply in support of their motion.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party."  *Stansberry v. Air Wisc. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'"  *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record").  "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to

create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

Finally, the Court notes that Plaintiff is proceeding without the assistance of counsel. "Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers and therefore are liberally construed." *Olivares v. Michigan Worker's Comp. Agency*, No. 18-2369, 2019 WL 2299250, at *2 (6th Cir. Apr. 16, 2019) (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (vacating dismissal of civil rights complaint and remanding for further proceedings)); *see also Walker v. Miller*, No. 18-3209, 2018 WL 7575709, at *1 (6th Cir. Oct. 17, 2018) ("But we hold pleadings filed by a pro se litigant 'to less stringent standards than formal pleadings drafted by lawyers,' and [we] may not uphold the dismissal of' a pleading by a pro se litigant simply because we think the allegations unlikely.") (quoting *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007)). However, "'pro se plaintiffs are not automatically entitled to take every case to trial.'" *Robinson v. Killips*, No. 18-1485, 2019 WL 1931873, at *1 (6th Cir. Feb. 22, 2019) (quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)) (affirming in part and reversing in part dismissal of pro se complaint).

**B.    Claims of Denial of Access to the Courts and Retaliation Against Defendants Ricker and Lovette (First Cause of Action)**

Plaintiff alleges that Defendants Ricker and Lovette denied him access to the courts in violation of his rights under the First Amendment to the United States Constitution in connection with his attempts to appeal the denial of a writ of *habeas corpus* in the Twelfth District Court of

Appeals, Madison County, Ohio ("Twelfth District"), Case No. CA2015-03-012. (Am. Compl. at ¶¶ 14–23;[6] ECF No. 139-1 (copy of Twelfth District's Entry Granting Motion to Dismiss).) According to Plaintiff, Defendants Ricker and Lovette intentionally held on to his merit brief appealing the adverse Twelfth District to the Ohio Supreme Court for more than 48 hours in violation of prison policy, Ohio Department of Rehabilitation and Corrections ("ODRC") Policy 75-MAL-01. (*Id.*; ECF No. 57-1 at PAGEID ## 522, 526, 528.) Because Defendants Ricker and Lovette held on to his merit brief and did not process and mail it in a timely manner, the Ohio Supreme Court did not receive Plaintiff's merit brief until August 11, 2015, one day after the filing deadline of August 10, 2015. (Am. Compl. at ¶ 19; ECF No. 57-1 at PAGEID # 524.) The Ohio Supreme Court therefore refused to file the untimely merit brief, returned it to Plaintiff, and later dismissed his case for failure to prosecute the action. (ECF No. 57-1 at PAGEID ## 524–25.) On December 2, 2015, the Ohio Supreme Court denied Plaintiff's motion for reconsideration. (*Id.* at PAGEID # 529.) Based on the foregoing, Plaintiff alleges that Defendants Lovette and Ricker violated his First Amendment rights by denying him access to the courts and retaliated against him. These claims are addressed in turn.

---

[6] Plaintiff's Verified Amended Complaint has the same force and effect as an affidavit at the summary judgment stage because it contains the appropriate verifying language. *See Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) ("[W]e believe that the stated purpose of 28 U.S.C. § 1746 is accomplished whether the verification statement is handwritten or typewritten and simply undersigned. Therefore, a verified complaint in either form would have the same force and effect as an affidavit and would give rise to genuine issues of material fact."); Am. Compl. at PAGEID # 515 (containing appropriate verification).

## 1.      Denial of access to the courts

As a preliminary matter, the Court notes that Plaintiff brings his claims against

Defendants under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceedings for redress.

In order to proceed under § 1983, a plaintiff must prove both that (1) the perpetrator acted under

color of state law; and (2) the conduct deprived the complainant of rights, privileges, or

immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S.

527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir. 1983), *rev'd and remanded sub

nom*, *Brandon v. Holt*, 469 U.S. 464 (1985).  As a general rule, a plaintiff proceeding under

§ 1983 must allege that the deprivation of her rights was intentional or at least the result of gross

negligence.  *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).  Mere negligence is not actionable

under § 1983.  *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).   In addition, a plaintiff must

"must plead that each [state actor] defendant, through the [defendant]'s own individual actions,

has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Grinter v.

Knight*, 532 F.3d 567, 575 (6th Cir. 2008) ("'Because § 1983 liability cannot be imposed under a

theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur

personal liability.'") (quoting *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)).  In

order to hold a supervisor liable under § 1983, a plaintiff must show that the supervisor

'"implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the

offending subordinate.'"  *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 634–35 (6th Cir.

2013) (quoting *Grinter*, 532 F.3d at 575). Finally, because Section 1983 is a method for vindicating federal rights, and is not itself a source of substantive rights, a plaintiff must first identify the specific constitutional right allegedly infringed in an action under Section 1983. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As previously discussed, Plaintiff alleges that Defendants Lovette and Ricker violated his constitutional rights by denying him access to the courts. Inmates enjoy a right of access to the courts under the First and Fourteenth Amendments to the United States Constitution. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977); *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013); *Thaddeus-x v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). This right of access prohibits "state prison officials from actively interfering with inmates' attempts to prepare legal documents[.]" *Lewis*, 518 U.S. at 350; *see also Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("Prison officials may not erect any barriers that impede an inmate's access to the courts."). However, the right "extends to direct appeals, habeas corpus applications, and civil rights claims only."[7] *Thaddeus-x*, 175 F.3d at 391. To prevail on this claim, the inmate must "show actual injury." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Thaddeus–X*, 175 F.3d at 394). In other words, the inmate must demonstrate "that

---

[7] Arguably, Plaintiff had no constitutional right of access to the courts as it relates to his discretionary appeal of the denial of his habeas corpus petition such that the claim fails on this basis. *Thaddeus-x*, 175 F.3d at 391 (right of access "extends to . . . habeas corpus *applications* . . . .) (emphasis added). In any event, with all access to courts claims, the inmate must demonstrate "that a *nonfrivolous* legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 353 (emphasis added). Here, on review of the denial of *habeas* petition, the court of appeals held that "making all reasonable inferences in [Plaintiff's] favor, it appears beyond doubt that [Plaintiff] can prove no set of facts that would entitle him to the relief requested." (ECF No. 57 at PAGEID # 503.) Put another way, an appeal of this decision would be frivolous. Any delay in mailing Plaintiff's brief to the Ohio Supreme Court is negligible because Plaintiff's claims had no merit.

a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 353.

"Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)). Finally, the inmate must show that "more than mere negligence by the state actor caused the injury[.]" *Sims v. Landrum*, 170 F. App'x 954, 956 (6th Cir. 2006) (citations omitted).

Last year, the United States Court of Appeals for the Sixth Circuit considered whether the doctrine embodied in *Heck v. Humphrey*, 512 U.S. 477 (1994)[8] applies to an access-to-the-court claim. *See Sampson v. Garrett*, 917 F.3d 880 (6th Cir. 2019). In *Sampson*, the plaintiff, a state inmate, alleged that state-court officials and private attorneys conspired to deprive him of a complete trial record, frustrating his direct criminal appeal and thereby violating his constitutional right to access the court. *Sampson*, 917 F.3d at 881–82. The Sixth Circuit concluded that *Heck* barred the plaintiff's access to the court claim, reasoning as follows:

> *Heck* blocks a state prisoner's § 1983 claim if its success "would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487, 114 S.Ct. 2364. The idea is to channel what amount to unlawful-confinement claims to the place they belong: habeas corpus. *Wilkinson v. Dotson*, 544 U.S. 74, 81, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005).
>
> Whether *Heck* applies to an access-to-the-court claim alleging state interference with a direct criminal appeal is a new question for us. That it is a new question, however, does not necessarily make it a hard question. Because the right of access is "ancillary to [a lost] underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court," a successful access claim requires a prisoner to show that the defendants have scuttled his pursuit of a "nonfrivolous, arguable" claim. *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (quotation omitted).

---

[8] The *Heck* doctrine prohibits a § 1983 action if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487.

Sampson maintains that he is entitled to damages because the defendants prevented him from using the trial transcripts and other materials in his direct—and unsuccessful—appeal. He could prevail on that claim only if he showed that the information could make a difference in a nonfrivolous challenge to his convictions. He could win in other words *only* if he implied the invalidity of his underlying judgment. *Heck* bars this kind of claim.

Sampson, 917 F.3d at 881–82 (collecting cases).

Here, like the plaintiff in *Sampson*, *Heck* bars Plaintiff's claims of denial of access to the courts against Defendants Lovette and Ricker. Plaintiff argues that Defendants Lovette and Ricker interfered with his underlying state *habeas corpus* claim by preventing him from timely filing his merit brief, resulting in the Ohio Supreme Court's dismissal of his case. According to Plaintiff, the "primary claim in his habeas petition was that his trial was literally held "coram non judice" and is void because the retired judge who presided was not reactivated as a judge by the Supreme Court of Ohio." (ECF No. 142 at PAGEID # 1503; *see also* ECF No. 155 at PAGEID ## 1737–38.) Plaintiff contends that if the Ohio Supreme Court timely received his merit brief and considered it, it would have concluded that the retired state court judge was not reactivated as a judge at the time of Plaintiff's criminal trial and "would have declared Plaintiff's trial, conviction and sentence void." (ECF No. 142 at PAGEID # 1503; *see also* ECF No. 160 at PAGEID # 1858 ("Plaintiff's primary argument is that there was no certificate of assignment issued for [state court] retired Judge Schott and therefore, Plaintiff's trial conviction and sentence is void.").) "After overturning the unfounded dismissal of Plaintiff's habeas corpus, Plaintiff would have been immediately released from his unlawful confinement." (ECF No. 142 at PAGEID ## 1503–04; *see also* ECF No. 155 at PAGEID # 1738 (arguing that "the Ohio Supreme Court would have reversed" the Twelfth District's decision dismissing his habeas petition).) To prevail on his access to the courts claims, Plaintiff must show that Defendants

Lovette and Ricker thwarted his nonfrivolous legal claim, *i.e.*, a successful appeal challenging his underlying conviction in state court. However, as explained by *Sampson*, *Heck* bars this kind of access to the courts claim. *Sampson*, 917 F.3d at 881–82. Accordingly, as it relates to Plaintiff's denial of access to the courts claims against Defendants Lovette and Ricker based on his unsuccessful appeal to the Ohio Supreme Court (First Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**.

### 2.    Retaliation

After carefully reviewing the voluminous filings on summary judgment, the undersigned is unable to conclude on the present record whether Plaintiff is entitled to summary judgment on the retaliation claim in the First Cause of Action. (*See* Am. Compl. at PAGEID ## 502–04.) First, the parties dispute whether Plaintiff actually alleged a retaliation claim against Defendants Lovette and Ricker in his "First Cause of Action" in the Amended Complaint. The Amended Complaint specifically identifies the "First Cause of Action" as only "Denial of Access to Courts[.]" (*Id*. at PAGEID # 502; *see also id*. at ¶ 69.) However, Plaintiff goes on to specifically allege within the First Cause of Action that "this denial of access [related to the untimely filing of his merit brief with the Ohio Supreme Court] was an intentional act of retaliation for Plaintiff previously complaining about the Cashier's office[']s actions." (*Id*. at ¶ 21; *see also id.* at ¶ 74 (referring to these Defendants' retaliatory actions); Plaintiff Affidavit, ¶ 1.) Plaintiff also avers under oath that he complained about the Cashier's Office in a kite (written note) directed to the Cashier's Office Supervisor on March 6, 2015. (Am. Compl. at ¶

21; Plaintiff Affidavit, ¶ 1; *see also* ECF No. 142-2 at PAGEID # 1533 (copy of kite dated March 6, 2015).)[9]

In their "Argument Summary" on summary judgment, Defendants concede that Plaintiff "brings claims of retaliation against all named Defendants for using the institutional grievance procedure" (ECF No. 139-10 at PAGEID # 1488), but completely fail to address this retaliation claim against Defendants Lovette and Ricker based on Plaintiff's complaint about the Cashier's Office. (*See generally id.*) In addition, when opposing Plaintiff's request for summary judgment, Defendants later deny that Plaintiff asserted this retaliation claim. (*See* ECF No. 152 at PAGEID # 1651.) Construing the filings and this record liberally, *see Olivares*, 2019 WL 2299250, at *2, the undersigned finds that Plaintiff has asserted a retaliation claim against Defendants Lovette and Ricker based on his kite (written note) addressed to the Cashier's Office Supervisor, *i.e.*, Ricker, on March 6, 2015. Defendants, however, have failed to address the

---

[9] Defendants complain that this kite "has never appeared in any previous pleadings or otherwise" throughout this litigation and challenge it as "not authenticated in any manner and is not a standard institutional document" and "must be disregarded and given no evidentiary weight because it cannot be verified or authenticated." (ECF No. 152 at PAGEID # 1651.) Defendants' arguments are not well taken. First, Plaintiff specifically refers to this kite in his Verified Amended Complaint. (*See* Am. Compl., ¶ 14.) Second, Defendants cite to no rule that Plaintiff violated by not previously publishing the actual kite to the Court and they do not otherwise assert that Plaintiff improperly failed to disclose this kite in discovery. Third, Plaintiff specifically authenticates the kite. (Plaintiff Affidavit, ¶ 1.) Moreover, even if the kite was not authenticated, courts may still consider unauthenticated documents at the summary judgment stage. *See* Fed. R. Civ. P. 56(c)(1) (omitting any requirement that materials be authenticated); *Stewart v. City of Memphis*, No. 2:16-cv-02574, 2019 WL 332812, at *4 (W.D. Tenn. Jan. 25, 2019) ("[M]aterials used at summary judgment to demonstrate a genuine dispute of material fact need not be authenticated. The 2010 amendments to Rule 56 removed that requirement."); *Watters v. Summit Cty., Ohio*, No. 5:14-cv-2390, 2016 WL 3544752, at *3 (N.D. Ohio June 29, 2016) ("The 2010 Amendments to Rule 56 of the Federal Rules of Civil Procedure eliminated the requirement that records relied on in support or opposition to a summary judgment motion must be authenticated.").

merits of this retaliation claim against Defendants Lovette and Ricker in their summary judgment motion after acknowledging it, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **DENIED** as to this claim.

However, after carefully reviewing the voluminous record, the Court cannot say based on the present record that Plaintiff is entitled to judgment on this claim. Retaliation based on an inmate's exercise of his or her constitutional rights violates the Constitution. *Thaddeus–X*, 175 F.3d at 394 (6th Cir. 1999) (*en banc*); *see also Harbin-Bey*, 420 F.3d at 579 (citation omitted). To establish a claim for retaliation under the First Amendment, a plaintiff establish the following: "'(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Berkshire v. Beauvais*, 928 F.3d 520, 531 (6th Cir. 2019) (quoting *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012)).

Here, it has been challenging to determine the protected conduct alleged by Plaintiff against Defendants Lovette and Ricker even after carefully reviewing the voluminous motions, supporting and opposing briefs, and evidence. Defendants Lovette and Ricker apparently believe the asserted protected right is access to the courts, which they concede is a protected right. (*See generally* ECF No. 152.) However, Plaintiff argues that the relevant protected conduct underlying his retaliation claim against these Defendants is his use of the prison grievance system when he submitted a kite (written note) to the Cashier's Office Supervisor, *i.e.*, Defendant Ricker, complaining about the Cashier's Office. (*See* Am. Compl. at ¶ 21; ECF No.

142 at PAGEID # 1498; ECF No. 160 at PAGEID ## 1854–55; Affidavit of Lionel Harris ("Plaintiff Affidavit"), ECF No. 142-15 at ¶ 1.)

Plaintiff avers under oath that he complained about the Cashier's Office in a kite (written note) directed to the Cashier's Office Supervisor on March 6, 2015. (Am. Compl. at ¶ 21; Plaintiff Affidavit, ¶ 1; *see also* ECF No. 142-2 at PAGEID # 1533 (copy of kite dated March 6, 2015).) Based on this record, Plaintiff has sufficiently established that he engaged in protected conduct when he sent a kite to the Cashier's Office Supervisor on March 6, 2015. *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) ("An inmate has a right to file 'non-frivolous' grievances against prison officials on his own behalf, whether written or oral." and "'Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form.") (citations omitted)); *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (stating that a prisoner has the "'undisputed First Amendment right to file grievances against prison officials on his own behalf'" (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *cf. Annabel v. Novak*, No. 1:19-cv-199, 2019 WL 1760131, at *3 (W.D. Mich. Apr. 22, 2019) (finding that "it appears that Plaintiff's 'kites' to Defendant Novak may be protected conduct"); *Brockman v. McCullick*, No. 17-10399, 2018 WL 3207902, at *4 (E.D. Mich. June 29, 2018) ("The right to file a grievance has been read more broadly to include activities such as threatening to file a grievance.").

However, even if the undersigned construes the allegations to find that Plaintiff has asserted a retaliation claim against Defendants Lovette and Ricker and that he engaged in protected conduct, the present record prevents the undersigned from following and assessing the parties' arguments about whether these Defendants took adverse action(s) and whether the

protected conduct motivated those action(s). For example, it is unclear whether Plaintiff asserts that one or both of these Defendants deliberately included a deficient certified cashier's statement of Plaintiff's inmate account in connection with the filing of his *habeas corpus* petition *and* deliberately withheld his merit brief to the Supreme Court *or* if these Defendants *only* deliberately withheld his merit brief. (*Compare*, *e.g.*, allegations about the "cashier's office" in Plaintiff Affidavit, ¶ 2; Am. Compl., ¶¶ 14–16; ECF No. 142 at PAGEID # 1498 at ¶¶ 4–5, *with* allegations of wrongdoing by specifically Defendants Lovette and/or Ricker in Plaintiff Affidavit, ¶ 3; Am. Compl., ¶ 18; ECF No. 142 at PAGEID # 1498–99, 1505 at ¶¶ 6, 8, 21.) The ambiguity as to the adverse action(s) in turn obfuscates the record on whether Plaintiff's protected conduct motivated at least in part the adverse action(s). Further complicating this record, interwoven throughout these issues are the parties' arguments assuming or referring to the right to access to the courts as the protected conduct rather than use of the grievance system as the protected conduct. (*See generally* ECF Nos. 139, 142, 152, 155, 160.) The Court is not responsible for searching for and guessing the parties' arguments and supporting evidence on summary judgment. *See Emerson v. Novartis Pharm. Corp*., 446 F. App'x 733, 736 (6th Cir. 2011) ("'[J]udges are not like pigs, hunting for truffles' that might be buried in the record." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))). The present record therefore does not persuade the undersigned that Plaintiff is entitled to summary judgment on this claim.

Defendants go on to argue in opposition to Plaintiff's request for summary judgment that they are entitled to qualified immunity on his retaliation claim. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from

24

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maben*, 887 F.3d at 269 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 914 (6th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "To determine whether an officer is entitled to qualified immunity, a court evaluates two independent prongs: whether the officer's conduct violated a constitutional right, and whether that right was clearly established at the time of the incident." *Id*. at 914–15 (citations omitted). Courts need not address these prongs sequentially and may address them in any order. *Id*.; *see also Maben*, 887 F.3d at 269.

Here, for the reasons discussed above, the undersigned cannot say on the present record whether Defendants Lovette and Ricker violated Plaintiff's constitutional rights by retaliating against him. Similarly, because the record is unclear as to the nature of the protected right, the undersigned is unable to determine whether the right was clearly established.

Accordingly, as to the retaliation claim against Defendants Lovette and Ricker (First Cause of Action), it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 142) be **DENIED**. In light of the foregoing and this recommendation, Plaintiff's Motion to Strike Defendant Ricker's affidavit (ECF No. 154) is **DENIED AS MOOT**.

## B.     Retaliation Claim Against Defendant Hays (Second Cause of Action)

Plaintiff alleges that Defendant Hays retaliated against Plaintiff when he "threatened Plaintiff," "deliberately destroyed eighteen (18) of Plaintiff's photos contained in five different

pieces of Plaintiff's incoming mail," and "opened clearly marked 'legal mail' from C.I.I.C. [Correctional Institution Inspection Committee] outside of Plaintiff's presence and stole documents out of legal mail." (ECF No. 142 at PAGEID # 1509; *see also* Am. Compl., ¶¶ 24–33.)

As previously discussed, to establish a claim for retaliation under the First Amendment, a plaintiff establish the following: "'(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Berkshire*, 928 F.3d at 531 (internal citations omitted). These elements are addressed in turn.

### 1. Protected conduct

As with the retaliation claim in the First Cause of Action, the voluminous record contains conflicting arguments and inconsistent statements as to the protected conduct element, making it unnecessarily difficult to consider the merits of this claim. Plaintiff first argues that Defendant Hays retaliated against him when Plaintiff engaged in the protected action of filing a grievance. (ECF No. 142 at PAGEID # 1509; ECF No. 155, PAGEID ## 1745–46; ECF No. 160, PAGEID # 1865; Plaintiff Affidavit, ¶ 4; Am. Compl., ¶¶ 26–27.) In his reply memorandum in support of his Motion for Partial Summary Judgment, however, Plaintiff apparently asserts for the first that his protected conduct underlying his retaliation claim against Defendant Hays also included Plaintiff's right to access the courts. (*See* ECF No. 160 at PAGEID # 1865.)

Defendants' position on this issue is also inconsistent. In their Motion for Summary Judgment, Defendants apparently concede the protected conduct element, stating that Plaintiff

alleges that Defendant Hays retaliated against him for filing a grievance, which Defendants agree is protected conduct. (ECF No. 139 at PAGEID ## 1442–43.) In opposing Plaintiff's Motion for Partial Summary Judgment, however, Defendants contend that Plaintiff did not engage in protected conduct, arguing that there is no proof he filed an informal complaint before Defendant Hays' alleged retaliation. (ECF No. 152 at PAGEID ## 1660–61.)

After carefully reviewing the convoluted record, the undersigned will consider only whether Plaintiff engaged in the protected conduct of using the grievance system. Plaintiff raised for the first time in his reply memorandum that the alleged protected conduct included his right to access the courts. (ECF No. 160 at PAGEID # 1865.) The Court therefore declines to consider this argument. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("[W]e have found issues to be waived when they are raised for the first time in . . . replies to responses" "[a]s a matter of litigation fairness and procedure[.]"); *Am. Trim, LLC v Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004) ("This argument was raised for the first time in [appellant's] reply brief, and this court has consistently held that we will not consider such arguments."); *Young v. Chuvalas*, No. 2:15-cv-3018, 2018 WL 3008492, at *3 (S.D. Ohio June 14, 2018) ("Because this argument is articulated for the first time in the reply brief, the Court declines to consider it.").

The record, however, sufficiently establishes that Plaintiff engaged in protected conduct by using the grievance system. First, the Court may hold Defendants to their concession that Plaintiff was engaged in the protected conduct of using the grievance system (ECF No. 139 at PAGEID ## 1442–43). *See Reed v. City of Memphis, Tennessee*, 735 F. App'x 192, 201 (6th Cir. 2018) (finding that the district court "reasonably considered" a fact "undisputed for

summary judgment purposes" when a party conceded the fact and later "regret[ted] that concession and point[ed] to testimony that he claim[ed] undermine[d]" that fact); *Eades v. Brookdale Senior Living, Inc.*, 401 F. App'x 8, 10 (6th Cir. 2010) (holding party to its concession when it later sought to retract such concession). Second, as Plaintiff points out, the record reflects that he used the grievance system by submitting an informal complaint regarding the denial of his right to access the courts on August 18, 2015. (Plaintiff Affidavit, ¶ 4; Plaintiff's Exhibit A-11, ECF No. 57-1 at PAGEID # 526 (copy of ICR dated August 18, 2015).) Accordingly, Plaintiff has satisfied the first element of his claim, *i.e.*, that he engaged in protected conduct. *Id.*; *Maben*, 887 F.3d at 265; *Hill*, 630 F.3d at 472.

**2.      Adverse action**

The undersigned next considers whether Defendant Hays took an adverse action against Plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct. *Berkshire*, 928 F.3d at 531. "'Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact.'" *Holzemer v. City of Memphis*, 621 F.3d 512, 524 (6th Cir. 2010) (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)). "[B]ecause 'there is no justification for harassing people for exercising their constitutional rights,' the deterrent effect of the adverse action need not be great in order to be actionable." *Lappin*, 630 F.3d at 473 (quoting *Thaddeus-X*, 175 F.3d at 397); *see also Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) ("The relevant question is whether the defendants' conduct is 'capable of deterring a person of ordinary firmness'; the plaintiff need not show actual deterrence." (quoting *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original))). "[T]he adverse-action requirement 'is

intended to weed out only inconsequential actions.'" *Holzemer*, 621 F.3d at 524 (quoting *Thaddeus-X*, 175 F.3d at 398); *but see Maben*, 887 F.3d at 266 ("However, some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury." (citing *Thaddeus–X*, 175 F.3d at 396)). "'[I]f a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed at the summary judgment stage.'" *Holzemer*, 621 F.3d at 524 (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)).

Here, as set forth above, Plaintiff alleges that Defendant Hays took the following adverse actions against him: "threatened Plaintiff," "deliberately destroyed eighteen (18) of Plaintiff's photos contained in five different pieces of Plaintiff's incoming mail," and "opened clearly marked 'legal mail' from C.I.I.C. outside of Plaintiff's presence and stole documents out of legal mail." (ECF No. 142 at PAGEID # 1509; *see also* Am. Compl., ¶¶ 24–33.)

### a. Threat

The Sixth Circuit has stated that "[e]ven the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill*, 630 F.3d at 472. However, "courts have generally held that vague threats of unspecified harm do not constitute adverse actions." *Snelling v. Gregory*, No. 1:17-cv-P41, 2017 WL 2602591, at *3 (W.D. Ky. June 14, 2017) (collecting cases); *see also Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Kyle v. Skipper*, No. 1:19-cv-353, 2019 WL 3729384, at *5 (W.D. Mich. Aug. 8, 2019) ("A *specific* threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary

firmness from exercising his or her First Amendment rights" and "[t]he threat Plaintiff alleges—

"you will regret it"—is too vague and non-specific to deter a person of ordinary firmness from

engaging in protected conduct") (citations omitted) (emphasis added).

Here, the Verified Amended Complaint describes Defendant Hays' threat as follows:

24.) On or about 8/18/15 Plaintiff picked up legal mail at the desk outside of mailroom from mailroom screener Defendant Hayes. No other staff members were present. Defendant Hayes is a known racist against African american [sic] inmates with numerous complaints filed against him. Approximately four other inmates were present. The legal mail was the returned, unfiled, Appeal of Right Merit Brief from the Ohio Supreme Court.

25.) Defendant Hayes stated to Plaintiff, "There's a lot of talk going on about your legal mail lately. What's going on?"

26.) Plaintiff explained that his Appeal of Right to the Ohio Supreme Court had gotten dismissed because Ma.C.I. had withheld it, causing it to be late and that he was going to have to "go through the motions" of filing for Reconsideration with the court and filing complaints against the cashier and the mailroom.

27.) Defendant Hayes responded with the veiled threat, "Oh yeah? It's going to suck to be you."

(Am. Compl., ¶¶ 24–27.)

Defendant Hays denies that he ever made any direct or indirect threats to Plaintiff.

(Affidavit of Jacob Hay ("Hays Affidavit"), ¶ 4, ECF No. 139-5.) Even assuming, however, for

purposes of the summary judgment motions only, that Defendant Hays threatened Plaintiff that

"[i]t's going to suck to be you" after Plaintiff stated his intention to file complaints against the

MaCI Cashier's Office and mailroom, this non-specific threat is too vague to deter a person of

ordinary firmness from engaging in protected conduct. *See Hardy v*, 2018 WL 3559190, at *3;

*Kyle*, 2019 WL 3729384, at *5; *Snelling*, 2017 WL 2602591, at *3; *see also Dahlstrom v. Butler*,

No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("[T]he conduct at issue

here is a general threat to 'get' a prisoner who files a grievance on [Defendant] Krause and 'steps out of line'" and "Krause's threat is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct").  Defendant Hay's threat allegedly made on August 18, 2015, therefore, does not rise to the level of an adverse action.

### b.      Stapled photos

Plaintiff next alleges that Defendant Hays destroyed Plaintiff photos as follows:

28.) Two days later, on 8/20/15 Defendant Hayes began making good on his threat. Plaintiff received three letters from his wife with five photos of his granddaughter's birthday party inside each letter.  All three envelopes were stapled though the very center of the envelope, effectively ruining the photos inside.

29.) Plaintiffs cell-mate, a causasion [sic] inmate, received mail on the same date with photos inside and his envelopes were "taped" along the open edge and no staples were used as per common practice with envelopes containing photos. Upon information and belief, Defendant Hayes destroyed Plaintiff's photos in a discriminatory retaliation for using the grievance procedure. . . .

31.) Five days later, on 9/24/15 Plaintiff received two letters from his wife with photos inside of his grandkids and each envelope was stapled through the very center and the photos were destroyed in retaliation for using the grievance procedure. Upon information and belief, Defendant Hayes again destroyed Plaintiff's photos in retaliation for using the grievance procedure.

(Am. Compl., ¶¶ 28–29, 31; *see also* Plaintiff Affidavit, ¶¶ 6, 11 (averring photos were destroyed on August 20, 2015, and on September 24, 2015, when photos were stapled through the center).)

Defendant Hays, however, denies targeting Plaintiff's mail with staples.  (Hays Affidavit, ¶ 6.)  While Plaintiff provides evidence that several of his photographs were stapled through the center (*see* Plaintiff Affidavit, ¶¶ 6, 11 (averring that he received incoming mail that contained photos with staples); Declaration of Randy H. Davis, ECF No. 142-4 at PAGEID # 1555 ("Davis Declaration"), he offers nothing but speculation based on unidentified "[i]nformation and belief" that Defendant Hays was the person who stapled five of Plaintiff's letters containing photos on

August 20, 2015, and on September 24, 2015. (*See* Am. Compl., ¶¶ 29, 31 (referring to

Plaintiff's "[i]nformation and belief" that Defendant Hays destroyed the photos with staples).)

Courts cannot consider as evidence at the summary judgment stage any part of declarations or

affidavits that are based simply on "information and belief." *See* Fed. R. Civ. P. 56(c)(4) ("An

affidavit or declaration used to support or oppose a motion [for summary judgment] must be

made on *personal knowledge*, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matters stated." (emphasis added)); *Ondo v.

City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) (stating that as part of the duty to show the

existence of a genuine issue of material fact, Rule 56(c)(4) restricts matters in affidavits to facts

"alleged on personal knowledge" and, therefore, "statements made on belief or 'on information

and belief,' cannot be utilized on a summary-judgment motion" (quoting 10B Wright, Miller &

Kane, Federal Practice and Procedure § 2738, at 345 (3d ed.1998))). Accordingly, "[a]ffidavits

based on mere information and belief, as opposed to facts the affiant knows to be true, are not

proper." *Valley Force Ins. Co. v. Fisher Klosterman, Inc.*, 2016 WL 8201164, at *1 (S.D. Ohio

Mar. 30, 2016) (citing *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007)).

Similarly, speculation is insufficient to create a genuine issue of material fact at the summary

judgment stage. *See Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (stating

that "conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and

are not sufficient to defeat a well-supported motion for summary judgment" and that "in order to

defeat summary judgment, the party opposing the motion must present affirmative evidence to

support its position; a mere 'scintilla of evidence' is insufficient"); *Meeks v. Schofield*, 10 F.

Supp. 3d 774, 784 (M.D. Tenn. 2014) ("Accordingly, speculative and conclusory allegations,

even if made within a verified complaint, are insufficient to withstand a motion for summary judgment."); *cf. Tschappatt v. Crescent Metal Prods., Inc.*, 2020 WL 260985, at *2 (6th Cir. Jan. 17, 2020) ("Even if his affidavits raised 'some metaphysical doubt as to the material facts' (they do not), they do not show a *genuine* dispute for trial." (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))) (emphasis in original). For these reasons, there is no evidence establishing Defendant Hays was the person who stapled Plaintiff's photos on August 20, 2015, and on September 24, 2015. Accordingly, based on this record, Plaintiff's stapled photos on these two separate dates do not constitute an adverse action by Defendant Hays.

### c. Opening and stealing legal mail

According to the Verified Amended Complaint, Defendant Hays opened marked legal mail from C.I.I.C. outside of Plaintiff's presence and took documents out of legal mail:

> 30.) On 9/19/15, upon information and belief, Defendant Hayes opened Plaintiffs outgoing mail, took out the page of the most recent complaint Plaintiff filed against the mailroom, re-sealed the envelope haphazzardly and mailed it out. This act of retaliation frustrated Plaintiffs attempts to obtain counsel. Plaintiff filed an Informal Complaint against the mailroom. (exhibit B-1 thru B-7) . . .

> 32.) Five days after that, on 9/29/15, Defendant Hayes opened Plaintiffs clearly marked "legal Mail" from the Correctional Institutional Inspection Committee outside of Plaintiffs presence in retaliation for using the grievance procedure and stole the enclosed grievance filing brochure pertaining to Plaintiff's attempt to challenge his prison conditions. (see exhibit B-8 thru B-12).

> 33.) On 11/13115, in Disposition of Grievance number #MACI-11-15-000019, prison officials GRANTED Plaintiffs grievance in which he accused the mailroom of stealing Plaintiffs legal mail from the C.I.I.C. in retaliation for using the grievance procedure against him. (exhibit B-13)[.]

(Am. Compl., ¶¶ 30, 32–33.)

However, the averments that Defendant Hays opened Plaintiff's legal mail on September

19 and 29, 2015, suffer from the same deficiency as described above because they appear to be based on Plaintiff's "information and belief." *See* Fed. R. Civ. P. 56(c)(4); *Ondo*, 795 F.3d at 605; *Valley Force Ins. Co.*, 2016 WL 8201164, at *1. Moreover, Defendant Hays denies that he opened Plaintiff's legal mail or removed any grievance from Plaintiff's mail. (Hays Affidavit, ¶¶ 9–11.) While the Plaintiff Affidavit and supporting evidence (Plaintiff's Exhibit B-13, ECF No. 142-5 at PAGEID # 1564) establish that Plaintiff's outgoing mail was opened, a copy of a grievance was taken from him, and that his legal mail from C.I.I.C. was opened outside of Plaintiff's presence, they do not establish that Defendant Hays was the person who committed these acts or otherwise contradict the Hays Affidavit. (*See* Plaintiff Affidavit, ¶¶ 9–11; Plaintiff's Exhibit B-13, ECF No. 142-5 at PAGEID # 1564.) Based on this record, the undersigned cannot conclude that Defendant Hays opened Plaintiff's legal mail outside of his presence and took documents from his legal mail. Because there is no evidence that Defendant Hays took any adverse action against Plaintiff, the retaliation claim must fail. *Berkshire*, 928 F.3d at 531. Accordingly, as it relates to Plaintiff's retaliation claim against Defendant Hays Second Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**.

## C. Retaliation Claims Against Defendants McCrary and Chamberlin (Third Cause of Action)

Plaintiff contends that Defendants McCrary and Chamberlin retaliated against him in violation of his rights under the First Amendment. As previously discussed, to establish a claim for retaliation under the First Amendment, a plaintiff establish the following: "'(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would

deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Berkshire*, 928 F.3d at 531 (internal citations omitted).

### 1. Protected conduct

Plaintiff contends that he was engaged in protected conduct when he filed complaints against the mailroom and Cashier's Office on August 18, 2015, and September 11, 2015. (ECF No. 142 at PAGEID # 1513; ECF No. 155 at PAGEID # 1749.) In moving for summary judgment and opposing Plaintiff's request for summary judgment on this claim, Defendants state as follows: "Here, Plaintiff claims that the alleged retaliation occurred because he filed institutional complaints. Defendants do not currently <u>contend</u> that this is protected conduct." (ECF No. 139 at PAGEID # 1447 (emphasis added); ECF No. 152 at PAGEID # 1664 (emphasis added.) However, both filings by Defendants then go on to argue that Plaintiff has not shown an adverse action or protected conduct, apparently conceding that Plaintiff has established that he was engaged in protected conduct. Based on this record, it appears that Defendants mistakenly typed in their Motion for Summary Judgment that they do not "currently <u>contend</u>" instead of "currently <u>contest</u>" that filing these institutional complaints is protected conduct, a mistake that they repeated when they cut and pasted portions of their Motion into their Response in Opposition to Plaintiff's Motion.

The record reflects that Plaintiff filed institutional complaints on August 18, 2015, and September 11, 2015. (Plaintiff's Exhibit A-11, ECF No. 57-1 at PAGEID # 526; Plaintiff's Exhibit A-12, ECF No. 57-1 at PAGEID # 527; Plaintiff Affidavit, ¶¶ 4, 7–8.) As previously discussed, the undersigned agrees that utilizing the prison grievance system to pursue non-

frivolous grievances is protected conduct. *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) ("An inmate has a right to file 'non-frivolous' grievances against prison officials on his own behalf, whether written or oral." and "'Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form.") (citations omitted)); *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (stating that a prisoner has the "'undisputed First Amendment right to file grievances against prison officials on his own behalf'" (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). Plaintiff therefore was engaged in protected conduct when he filed institutional complaints on August 18, 2015, and September 11, 2015.

### 2. Adverse action

As previously discussed, the undersigned must next consider whether Defendants McCrary and Chamberlin took an adverse action against Plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct. *Berkshire*, 928 F.3d at 531. Plaintiff contends that Defendant McCrary took adverse action against him by improperly withholding his mail for at least eleven (11) days in violation of ODRC Policy 75-MAL-01.[10] Plaintiff also contends that Defendant Chamberlin destroyed his mail. Defendants McCrary and Chamberlin deny that they took any adverse action against Plaintiff.

On September 3, 2015, MaCI received a 41-page letter addressed to Plaintiff from Lejetter Harris, who Plaintiff has referred to as his wife. (Plaintiff's Exhibit C-7, ECF No. 142-6

---

[10] As previously noted, ODRC Policy 75-MAL-01 provides, *inter alia*, that "[i]ncoming and outgoing letters shall be held for no more than 48 hours and packages shall be held for no more than 72 hours, excluding holidays and weekends." (Plaintiff's Exhibit A-7, ECF No. 57-1, at PAGEID # 522.) ODRC Policy 75-MAL-01 also permits inmates to receive only five pages of copied material at one time. (Affidavit of Mary McCrary, ECF No. 139-6 ("McCrary Affidavit"), ¶ 5.)

at PAGEID # 1567; Plaintiff's Exhibit C-1, ECF No. 57-1 at PAGEID # 543.) Plaintiff avers the letter from Ms. Harris contained legal materials. (Plaintiff Affidavit, ¶ 8.)[11]

On September 14, 2015, Plaintiff received five pages of this letter from Ms. Harris along with a form entitled "Notice of an Unauthorized Item Received" ("Notice"), which was completed by Defendant McCrary, who was at that time employed as a MaCI Mail Clerk Screener. (Plaintiff Affidavit, ¶ 8; Plaintiff's Exhibit C-1, ECF No. 142-6 at PAGEID # 1565; Plaintiff's Exhibit C-2, ECF No. 142-6 at PAGEID # 1566 (copy of form); McCrary Affidavit, ¶¶ 2–3 (averring, *inter alia*, that she was employed as a MaCI Mail Clerk Screener from approximately September 14, 2015, through November 15, 2015).) On the Notice, the box next to a section entitled "Nuisance Contraband" is checked with the following description of contraband: "36 sheets of copied material over limit[.]" (Notice, at PAGEID # 1566.) The Notice, dated September 14, 2015, reflects that the sender's name is Lejetter Harris. (*Id.*)

On September 16, 2015, Plaintiff filed an informal complaint, complaining that the letter from Ms. Harris was withheld for eleven days and not timely processed in violation of ODRC Policy 75-MAL-01. (Plaintiff's Exhibit C-1, ECF No. 142-6 at PAGEID # 1565.) On September 21, 2015, Defendant Chamberlin responded, explaining that mailroom staff denied withholding Plaintiff's mail and advising that the letter from Ms. Harris "is not considered legal mail as it wasn't sent from/by legal establishment." (*Id.*)

---

[11] Defendants aver that the letter from Ms. Harris did not constitute legal mail under ODRC Policy 75-MAL-01 because the letter was not from a legal institution, attorney, law firm, or any entity that would qualify it as legal mail under the Policy. (McCrary Affidavit, ¶ 6; Chamberlin Affidavit, ¶ 5.)

A subsequent investigation revealed that the letter was received on September 3, 2015, and that Plaintiff did not receive the Notice until September 14, 2015. (Plaintiff's Exhibit C-7, ECF No. 142-6 at PAGEID # 1567.) The investigation also revealed that although Plaintiff requested that the additional papers withheld as contraband from Ms. Harris's letter be returned to her, Ms. Harris never received the papers, the mailroom could not locate the papers, and the Contraband Log does not reflect receipt of these papers. (*Id.*) The investigation concluded that Plaintiff's items were misplaced in the mailroom and that the proper procedure was not followed in processing Plaintiff's unauthorized items. (*Id.* (reflecting further that "[t]his is a concern with this office and that the process needs to be changed and corrected").)

Although Defendant McCrary denies that she "intentionally" withheld Plaintiff's contraband mail (McCrary Affidavit, ¶ 9) and Defendant Chamberlin avers that she did not "intentionally destroy" Plaintiff's contraband mail (Chamberlin Affidavit, ¶ 4), the undersigned at this stage simply determines whether withholding Plaintiff's mail would deter a person of ordinary firmness from continuing to engage in that conduct. *Berkshire*, 928 F.3d at 531. Plaintiff has averred under oath that although it was a letter from Ms. Harris, the letter included legal materials (Plaintiff Affidavit, ¶ 8) that were withheld for eleven days and that other than five pages sent to Plaintiff with the Notice, the remaining contents of the letter were misplaced or destroyed. Considering that the deterrent effect of the adverse action need not be great in order to be actionable[,]" *Lappin*, 630 F.3d at 473, the undersigned cannot conclude, based on the present record, that the withholding of mail and permanent loss of the contraband mail is inconsequential or *de minimis*. *See id.*; *Holzemer v. City of Memphis*, 621 F.3d 512, 524 (6th Cir. 2010) ("[T]he adverse-action requirement 'is intended to weed out only inconsequential

actions.'") (quoting *Thaddeus-X*, 175 F.3d at 398); *cf. Maben*, 887 F.3d at 267; *Bell v. Johnson*, 308 F.3d 594, 606–07 (6th Cir. 2002) (finding that confiscation of legal papers and other property is sufficiently adverse).  Accordingly, Plaintiff has met the adverse action element of his claim.

### 3.      Motivation/causation

In determining whether there exists a causal connection existed between the protected conduct and the adverse action, courts must consider "the totality of the circumstances to determine whether an inference of retaliatory motive [may] be drawn."  *Holzemer*, 621 F.3d at 526.  To establish causation, a plaintiff must show only "that his protected conduct was a motivating factor" for the retaliatory action.  *Maben*, 887 F.3d at 262 (6th Cir. 2018) (citations omitted). "'[T]he motivating factor prong of a First Amendment retaliation case can be supported by circumstantial evidence, with temporal proximity aiding in the analysis.'"  *Campbell v. Mack*, 777 F. App'x 122, 134–35 (6th Cir. 2019) (quoting *Spencer v. City of Catlettsburg*, 506 F. App'x 392, 396 (6th Cir. 2012)).  "Under the third element, '[u]sually, the question of causation is a factual issue to be resolved by a jury, and may be satisfied by circumstantial evidence.'"  *Maben*, 887 F.3d at 267 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 519–20 (6th Cir. 2008)). "'Nonetheless, a court may grant summary judgment even in a causation inquiry, where it is warranted.'"  *Id*. (quoting *Hartsel v. Keys*, 87 F.3d 795, 803 (6th Cir. 1996)).

"'Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant.'"  *Id*. (quoting *Thaddeus–X*, 175 F.3d at 399).  "'If the defendant can show that he would have taken

the same action in the absence of the protected activity, he is entitled to prevail on summary

judgment.'" *Id.* (quoting *Thaddeus–X*, 175 F.3d at 399).

### a.     Defendant McCrary

In this case, Plaintiff argues that by the time he received the Notice of his withheld mail

on September 14, 2015, he had already filed two complaints against the mailroom on August 18,

2015, and September 11, 2015.  (Plaintiff's Exhibit A-11, ECF No. 57-1 at PAGEID # 526;

Plaintiff's Exhibit A-12, ECF No. 57-1 at PAGEID # 527; Plaintiff Affidavit, ¶¶ 4, 7–8.)

"Temporal proximity between the protected conduct and the adverse action by the state actor

'alone may be significant enough to constitute indirect evidence . . . to create an inference of

retaliatory motive.'" *Paige v. Coyner*, 614 F.3d 273, 283 (6th Cir. 2010) (quoting *Muhammad v.

Close*, 379 F.3d 413, 417–18 (6th Cir. 2004)); *see also Maben*, 887 F.3d at 268 ("Additionally,

there is a suspicious temporal proximity between Maben's grievance and the alleged retaliatory

action.  This Court has 'previously considered the temporal proximity between protected conduct

and retaliatory acts as creating an inference of retaliatory motive.'") (quoting *King v. Zamiara*,

680 F.3d 686, 695–96 (6th Cir. 2012)); *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 505

(6th Cir. 2014) (citations omitted).

Here, however, the record does not reflect that Plaintiff filed any complaints against

Defendant McCrary.  While he points to the complaints filed against the mailroom on August 18,

2015, and September 11, 2015, the uncontroverted evidence establishes that Defendant McCrary

did not begin working as a MaCI Mail Clerk Screener until September 14, 2015.  (McCrary

Affidavit, ¶ 2.)  Accordingly, the complaints Plaintiff filed on August 18, 2015, and September

11, 2015, against the MaCI mailroom could not have included Defendant McCrary.  The filing of

these complaints therefore does not establish a temporal proximity to create an inference of retaliatory motive. (*See also* McCrary Affidavit, ¶ 7 (averring that she does not recall Plaintiff filing any institutional complaints against here), ¶ 9 (averring that she did not intentionally withhold Plaintiff's mail).) Based on this record, Plaintiff has not presented evidence tending to prove the third element, *i.e.*, causation/motivation, to his claim. Accordingly, as it relates to Plaintiff's retaliation claim against Defendant McCrary (Third Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**.

### b.      Defendant Chamberlin

As set forth above, temporal proximity between protected conduct and an adverse action alone may be sufficient to create an inference of retaliatory motive. *Paige*, 614 F.3d at 283; *Maben*, 887 F.3d at 268; *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 505 (6th Cir. 2014) (citations omitted).

Here, Plaintiff filed two complaints against the mailroom on August 18, 2015, and September 11, 2015. (Plaintiff's Exhibit A-11, ECF No. 57-1 at PAGEID # 526; Plaintiff's Exhibit A-12, ECF No. 57-1 at PAGEID # 527; Plaintiff Affidavit, ¶¶ 4, 7–8.) On September 16, 2015, Plaintiff filed another complaint about the mailroom's failure to timely process the letter from Ms. Harris. (Plaintiff's Exhibit C-1, ECF No. 142-6 at PAGEID # 1565.) Defendant Chamberlin responded to the third complaint on September 21, 2015. (*Id.*) As of November 15, 2015, the mailroom could not locate Plaintiff's contraband mail. (Plaintiff's Exhibit C-7 at PAGEID # 1567.) By averring that she "did not *intentionally* destroy" Plaintiff's contraband mail from Ms. Harris (Chamberlin Affidavit, ¶ 4 (emphasis added)), Defendant Chamberlin

could be conceding that she did, in fact, destroy this mail, just not intentionally. The record is therefore unclear as to whether Defendant Chamberlin destroyed the contraband mail. In addition, although Defendant Chamberlin avers that she was unaware of Plaintiff's claims of retaliation against her prior to the filing of lawsuit (*id*. at ¶ 3), the temporal proximity of, at the very least, the complaint filed September 16, 2015 (to which Defendant Chamberlin later responded) and Defendant Chamberlin's alleged destruction of Plaintiff's contraband mail by or before November 15, 2015, as well as the totality of the circumstances, are sufficient to create an inference of retaliatory motive. *See Paige*, 614 F.3d at 283; *Maben*, 887 F.3d at 268; *Montell*, 757 F.3d at 505; *Holzemer*, 621 F.3d at 526.

The burden of production therefore shifts to Defendant Chamberlin to show that she would have taken the same action in the absence of the protected activity. *Maben*, 887 F.3d at 268. Defendant Chamberlin insists that Plaintiff's use of the grievance system could not have motivated her to retaliate against Plaintiff because he did not previously filed grievances against her. (ECF No. 139 at PAGEID ## 1448–49; ECF No. 152 at PAGEID ## 1666–67.) However, as discussed above, Plaintiff filed a complaint against the mailroom on September 16, 2015, to which Defendant Chamberlin responded, establishing her involvement in the underlying complaint. The temporal proximity to the filing of this complaint and the destruction of the contraband mail is sufficient to establish an inference of a retaliatory motive for the reasons previously discussed. *Cf. Maben*, 887 F.3d at 268 (finding that the defendant did not meet his burden of production on causation where he has "done little more than deny the allegations put forth by" the plaintiff) (citing *Thaddeus–X*, 175 F.3d at 399).

Defendant Chamberlin goes on to insist that the destruction of Plaintiff's contraband mail would have happened in any event:

> Assuming, *arguendo*, that Defendant Chamberlin did destroy the contraband mail in question, this act still would have occurred. There is a protocol for contraband mail which the institution receives. This mail would have still been confiscated. A contraband sheet would have been completed and delivered to Plaintiff. If Plaintiff was unresponsive or did not have sufficient funds, then the mail would have been destroyed within a particular time period. There is no adverse action or causal connection present in the instant matter. Accordingly, there is no retaliation.

(ECF No. 152 at PAGEID # 1667.)

Defendant Chamberlin's argument is not persuasive. As a preliminary matter, none of these assertions or representations are under oath or cite to supporting evidence. "Arguments in parties' briefs are not evidence." *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006); *see also Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (stating that unsubstantiated assertions are not evidence). In addition, Defendant Chamberlin's argument is based on the speculative assumption that the contraband mail would have been destroyed in any event because Plaintiff would have been "unresponsive" or would have insufficient funds. However, speculation is insufficient to create a genuine issue of material fact at the summary judgment stage. *See Jones*, 677 F. App'x at 282 (stating that "conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment"). Based on this record, there is a genuine issue of material fact as to whether Defendant Chamberlin destroyed Plaintiff's contraband mail and a reasonable trier of fact could find in Plaintiff's favor on the causation element of his claim against Defendant Chamberlin.

### d.     Qualified immunity

Defendant Chamberlin argues that she is entitled to qualified immunity on this claim. As explained earlier, a court evaluates two separate prongs when determining whether a defendant is entitled to qualified immunity:  " whether the officer's conduct violated a constitutional right, and whether that right was clearly established at the time of the incident." *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 914–15 (6th Cir. 2016) (citations omitted).

Turning to the first prong, for the reasons set forth above, Plaintiff has introduced sufficient to create a genuine issue of material fact as to whether Defendant Chamberlin violated his constitutional rights.

As to the second prong, the Sixth Circuit "has repeatedly recognized that if a prison officer 'retaliated against [a prisoner] for filing grievances,' the "'alleged conduct also comprises a violation of clearly established constitutional law.'"  *Maben*, 887 F.3d at 269 (quoting *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996)).  However, "[t]he immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights." *Moore v. Zalewski*, No. 2:16-cv-91, 2018 WL 3203606, at *8 (W.D. Mich. Apr. 30, 2018) (citing *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991)), *adopted by* 2018 WL 3156207 (W.D. Mich. June 28, 2018).  For these reasons, the undersigned cannot conclude that Defendant Chamberlin is entitled to summary judgment on this claim.

Accordingly, as it relates his retaliation claim against Defendant McCrary (Third Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be

**DENIED**.  However, as it relates to his retaliation claim against Defendant Chamberlin (Third Cause of Action), it is **RECOMMENDED** that both Defendants' Motion for Summary Judgment (ECF No. 139) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**.

### D.     Retaliation Claim Against Defendant Ricker (Fourth Cause of Action)

Plaintiff contends that Defendant Ricker retaliated against him for using the grievance system by removing him from his job and demoting him to a more time-consuming, stressful, and lower-paying job.  (Am. Compl., ¶¶ 41–43.)  Defendant Ricker denies that she retaliated against Plaintiff.

As a preliminary matter, the undersigned notes that in opposing Defendants' Motion for Summary Judgment, "Plaintiff asserts that he still has not received the requested discovery necessary to respond sufficiently to the Fourth Cause of Action.  Therefore, defendants should not be entitled to summary judgment on this claim."  (ECF No. 155 at PAGEID # 1757.)[12] Construing his allegations liberally, *see Olivares v. Michigan Worker's Comp. Agency*, No. 18-2369, 2019 WL 2299250, at *2 (6th Cir. Apr. 16, 2019) (citations omitted), the undersigned assumes that Plaintiff intends to seek relief pursuant to Federal Rule of Civil Procedure 56(d) even though he did not file a separate motion seeking such relief.  Rule 56(d) provides the applicable mechanism when a party contends that additional discovery is needed to respond to a motion for summary judgment:

> When Facts Are Unavailable to the Nonmovant. If a nonmovant *shows by affidavit* or declaration that, *for specified reasons*, it cannot present facts essential to justify its opposition, the court *may*:

---

[12] Plaintiff has not moved for summary judgment on this claim.  (*See generally* ECF No. 142.)

(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d) (emphasis added). "Rule 56(d) is intended to provide a mechanism for the parties and the court 'to give effect to the well-established principle that the plaintiff must receive a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment.'" *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co*., No. 2:07-cv-1285, 2012 WL 1340369, at *2 (S.D. Ohio April 17, 2012) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 797 (6th Cir. 2009)). "The need to comply with Rule 56(d) 'cannot be overemphasized.'" *Scadden v. Werner*, 677 F. App'x 996, 999 (6th Cir. 2017) (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)). The required affidavit or declaration must "'indicate to the district court [the party's] need for discovery, what material facts [the party] hopes to uncover, and why [the party] has not previously discovered the information.'" *Clifford v. Church Mut. Ins. Co.*, No. 2:13-cv-853, 2014 WL 5529664, at *2 (S.D. Ohio Nov. 3, 2014) (alterations in original) (quoting *Cacevic*, 226 F.3d at 488)); *see also Scadden*, 677 F. App'x at 999 ("Without a Rule 56(d) affidavit 'or a motion that gives the district court a chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery.'") (quoting *Plott v. Gen. Motors Corp*., 71 F.3d 1190, 1196 (6th Cir. 1995)). "Nevertheless, to avoid 'unduly exalt[ing] form over substance,' this circuit has not required a formal affidavit when a party has clearly explained its need for more discovery on a particular topic to the district court prior to or contemporaneously with the motion for summary judgment." *United States v. Rohner*, 634 F. App'x 495, 504 (6th Cir. 2015) (quoting *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc*., 280 F.3d 619, 627–28 (6th Cir. 2002)). "Thus, if a

party does not satisfy Rule 56(d)'s technical requirements, he must at least affirmatively demonstrate that the discovery sought would enable him to 'adequately oppose the motion for summary judgment.'" *Id*. (quoting *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003)). "The Sixth Circuit has held that it is not an abuse of discretion for the district court to deny the Rule 56 request for discovery when the party 'makes only general and conclusory statements [ ] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [claim] to be discovered.'" *Snow v. Kemp*, No. 10-2363-STA-CGC, 2011 WL 345864, at *1 (W.D. Tenn. Feb. 2, 2011) (second alteration in original) (quoting *Ironside v. Simi Valley Hosp.*, 188 F.3d 350, 354 (6th Cir. 1999)). Finally, "even when a party properly presents a Rule 56(d) affidavit and a motion to extend discovery, the rule only provides that a court 'may' extend the discovery deadline." *Scadden*, 677 F. App'x at 999.

Here, Plaintiff did not file a separate Rule 56(d) motion or attach an affidavit or declaration regarding the specific discovery necessary to respond to Defendants' Motion for Summary Judgment. *See Scadden*, 677 F. App'x at 999. More significantly, however, he has not clearly explained in his brief his need for more discovery on a particular topic nor affirmatively demonstrated that the specific discovery sought would enable him to adequately oppose the motion for summary judgment. *Rohner*, 634 F. App'x at 504. Instead, Plaintiff generally complains that "he still has not received the requested discovery necessary to respond sufficiently to the Fourth Cause of Action." (ECF No. 155 at PAGEID # 1757.) This generalized assertion fails to identify the specific discovery he needs and does not provide the necessary information to support his assertion that he cannot adequately respond to Defendants' Motion for

Summary Judgment. *See* Fed. R. Civ. P. 56(d); *Rohner*, 634 F. App'x at 504; *Snow*, 2011 WL 345864, at *1. Plaintiff has therefore failed to comply with the substance or purpose of Rule 56(d). *Reliance Mediaworks (USA) Inc. v. Giarmarco, Mullins & Horton, P.C.*, 549 F. Appx. 458, 464 (6th Cir. 2013) (affirming grant of summary judgment where, *inter alia*, the party opposing summary judgment "had not complied with the substance or purpose of Rule 56(d)"). Accordingly, to the extent Plaintiff asserts that he cannot adequately respond to Defendants' Motion for Summary Judgment as to the Fourth Cause of Action and seeks relief under Rule 56(d), Plaintiff's request is not well taken. *Id.*; *see also Rohner*, 634 F. App'x at 504; *Donnal v. Perez*, No. 3:15-cv-1550, 2018 WL 1182516, at *5 (N.D. Ohio Mar. 7, 2018) ("[T]he explanation provided [by the party opposing summary judgment] simply does not justify the application of Rule 56(d). He offers no explanation as to why an additional, but unspecified, amount of time would enable his procurement of an expert or what information he seeks from such expert. As such, the Court declines his request.").

Turning to the merits of Plaintiff's retaliation claim against Defendant Ricker in the Fourth Cause of Action, Plaintiff alleges as follows:

> On or about 11/10/15, Defendant Ricker arbitrarily removed Plaintiff from his 'Material Handler/recycling' job assignment without proper procedural safeguards. She used the power of her office and demoted him to the more time-consuming, stressful and lower-paying job of 'Porter' in direct retaliation for using the grievance procedure against her office approximately one month prior.

(Am. Compl., ¶ 41.)

Defendants do not dispute, and the undersigned agrees for the reasons previously discussed, that Plaintiff's use of the grievance system is protected. (ECF No. 139 at PAGEID # 1450.) The parties do dispute, however, whether Defendant Ricker took an adverse action by

48

removing Plaintiff from his prison job.  The Sixth Circuit "has indicated loss of a prison job can constitute an adverse action for retaliation purposes."  *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citations omitted).

Here, Defendant Ricker avers that she did not have authority to change an inmate's job classification:

> 2.      During the time relevant to Plaintiff's allegations against me, approximately August 4, 2015 through November 10, 2015, I was employed at the Madison Correctional Institution as a Financial Associate Supervisor.
>
> 3.      My job duties included supervising four financial associates in the business and responding to Informal Complaint Resolutions.
>
> 4.      I have never possessed the ability or discretion to hire or fire individuals. Additionally, I have never possessed the ability or discretion to unilaterally change an inmate's job classification.
>
> 5.      I did not have the ability or discretion to affect any portion of an inmate's job classification. . . .
>
> 18.     In response to Plaintiff's Fourth Cause of Action [Doc. #:57, PageID #: 507], I did not unilaterally change Plaintiff's job classification.  Inmate job classifications are managed by Unit Management staff.  I have never been employed in any type of Unit Management Position.

(Affidavit of Cynthia Ricker, ECF No. 139-3 ("Ricker Affidavit"), ¶¶ 2–5, 18; *see also* Plaintiff's Exhibit D-1, ECF No. 57-1 at PAGEID # 553 (responding to complaint by advising, *inter alia*, that MaCI is restructuring all institutional jobs).)  Plaintiff disputes this evidence but offers only speculation and conclusory assertions that Defendant Ricker was actually responsible for his job change.  (ECF No. 155 at PAGEID ## 1758–61.)  As previously discussed, speculation and conclusory assertions are insufficient to withstand summary judgment.  *See Jones*, 677 F. App'x at 282; *Meeks*, 10 F.Supp.3d at 784.  Based on this record, the undersigned cannot conclude that Defendant Ricker removed Plaintiff from his job as a handler/recycler and

demoted him to a porter. Because there is no evidence that Defendant Ricker took any adverse action against Plaintiff related to the job change, the retaliation claim must fail. *Berkshire v. Beauvais*, 928 F.3d 520, 531 (6th Cir. 2019). Accordingly, as it relates to Plaintiff's retaliation claim against Defendant Ricker (Fourth Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED**.

**E.      Retaliation Claim Against Chamberlin (Fifth Cause of Action)**

Plaintiff alleges that "[o]n 11/19/15, in direct retaliation for using the grievance procedure, Defendant Chamberlain intercepted one of two letters to Plaintiff from the Institution Inspector and stole a copy of the enclosed Disposition of Grievance pertaining to the complaint Plaintiff filed against her." (Am. Compl., ¶ 44; *see also* Plaintiff's Exhibit E-3, ECF No. 57-1 at PAGEID # 562 (copy of Informal Complaint Resolution dated November 23, 2015 (alleging Defendant Chamberlin intercepted letter and took a copy of the Inspector's decision) and copy of the institutional response to this complaint).) The Court understands this retaliation claim based on removing or stealing mail related to Plaintiff's institutional grievances to be different than the retaliation claim against Defendant Chamberlin based on contraband mail asserted in the Third Cause of Action. Defendants move for summary judgment on this claim (ECF No. 139 at PAGEID ## 1452–53) but Plaintiff does not seek summary judgment on this claim (*see generally* ECF No. 142).

Defendants again do not dispute, and the undersigned agrees for the reasons previously discussed, that Plaintiff's use of the grievance system is protected. (ECF No. 139 at PAGEID # 1452.) The parties do dispute, however, whether Defendant Chamberlin took an adverse action by removing a letter from the Institutional Inspector from Plaintiff's mail and stealing a copy of a

Disposition of Grievance. Defendant Chamberlin denies removing the letter and the Inspector's decision and avers that she has never attempted to conceal mistakes that occurred under her command while working at MaCI. (Chamberlin Affidavit, ¶¶ 6–7.) In opposing summary judgment, Plaintiff insists that a sample of Defendant Chamberlin's handwriting "conclusively matches the envelope in question in exhibit E-2 [an envelope identified in Plaintiff's complaint about Defendant Chamberlin that he believes shows she intercepted and stole his mail]." (ECF No. 155 at PAGEID # 1764 (citing Plaintiff's Exhibits E-2 (copies of envelopes with handwriting) and E-3).) He goes on to argue that "[t]he presence of Chamberlin's handwriting on the envelope in question presents a genuine issue of material facts in dispute and therefore" precludes summary judgment and a finding of qualified immunity. (*Id.* at PAGEID # 1765.)

Plaintiff's arguments are not well taken. In addition to denying that she took the specific adverse action Plaintiff describes, Defendant Chamberlin specifically avers that "[n]either handwriting samples provided in Plaintiff's Exh. E-2 [Doc. #: 57-1, PageID #: 561] is my handwriting." (Chamberlin Affidavit, ¶ 8.) Plaintiff's contrary assertions about handwriting on envelopes amount to nothing more than speculation, which the Court has previously explained is not enough to withstand summary judgment. *See Jones*, 677 F. App'x at 282; *Meeks*, 10 F.Supp.3d at 784. Based on this record, the undersigned cannot conclude that Defendant Chamberlin intercepted a letter to Plaintiff from the Institution Inspector and stole a copy of a Disposition of Grievance pertaining to the complaint Plaintiff filed against her. Because there is no evidence that Defendant Chamberlin took any adverse action against Plaintiff related to intercepting mail and steal a copy of a Disposition of Grievance, the retaliation claim in the Fifth Cause of Action must fail. *Berkshire*, 928 F.3d at 531. Accordingly, as it relates to Plaintiff's

retaliation claim against Defendant Chamberlin (Fifth Cause of Action), it is

**RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be

**GRANTED**.

**F.  Claims Against Defendant Sowers (Sixth Cause of Action)**

Plaintiff alleges that Defendant Sowers retaliated against him as follows:

48.) On 01/14/16 mailroom screener, Defendant Aaron Sowers, a known "white supremacist", opened Plaintiffs legal mail from the law offices of Frost, Brown, Todd attorneys outside of Plaintiff's presence. Defendant Sowers stole Plaintiff's original letter to the attorneys and copies of four of Plaintiff's Disposition of Grievances out of the incoming legal mail. The stolen letter specifically detailed Plaintiff's legal strategy for a 1983 civil rights lawsuit against Ma.CI. employees. Plaintiff filed an Informal Complaint on 01/15/16 accusing the mailroom of retaliation for plaintiff's ongoing grievance complaints against the mailroom. (exhibit F-1 thru F-3)

49.) On 02/12/16 prison officials GRANTED Plaintiff's grievance number MACI-02-16-000063, which accused Defendant Sowers of opening Plaintiff's legal mail outside of his presence and of stealing the above listed legal papers in paragraph 48 in retaliation for using the grievance process. (see exhibit F-4 & F-5)

(Am. Compl., ¶¶ 48–49.)

**1.  Adverse action**

Defendants again do not dispute, and the undersigned agrees for the reasons previously

discussed, that Plaintiff's use of the grievance system is protected.  (ECF No. 139 at PAGEID #

1453.)  The parties do dispute, however, whether Defendant Sowers took the adverse actions

described by Plaintiff in the Sixth Cause of Action.  Specifically, Defendant Sowers denies that

he opened Plaintiff's legal mail or removed documents from such mail:

6.      In response to Plaintiff's Sixth Cause of Action [Doc. #:57, PageID #: 508], I did not open Plaintiff's legal mail on January 14, 2016.  At that time, it was only my fourth day working in the mailroom.  I did not have permission to open any inmate mail at that time.

7.     I have never removed any items from any inmate's mail that is not considered contraband material.  I did not open Plaintiff's legal mail on January 14, 2016.  I did not remove any documents from Plaintiff's legal mail on January 14, 2016.

8.     I never destroyed any outgoing inmate mail while working as a mail clerk screener.  I did not destroy Plaintiff's mail that he claims went missing on February 8, 2016.

(Affidavit of Aaron Sowers, ECF No. 139-8 ("Sowers Affidavit"), ¶¶ 6–8.)

Plaintiff, however, contends that other evidence in the record contradicts these averments. Plaintiff first points to MaCI's investigation into this matter and Lieutenant Williams' finding that Defendant Sowers opened Plaintiff's legal mail.  (Plaintiff's Exhibit F-2A, ECF No. 142-9 at PAGEID # 1574 (copy of response to complaint); Plaintiff's Exhibit F-13 at PAGEID ## 1578– 79 (copy of Defendant Sowers' responses to Interrogatory Nos. 19 and 20); Exhibit F-4, ECF No. 142-9 at PAGEID # 1576 (copy of Disposition of Grievance approving grievance where, *inter alia*, the reviewing official "reviewed the envelope and contents as well as witnessed the opened envelope that was addressed to you and return address from Frost, Brown, and Todd, LLC, Attorneys" and "discussed this process with Supervisors in both area.  This is a concern with this office and that the process needs to be changed and corrected").)  In responding to interrogatories regarding these actions, Defendant Sowers stated as follows:

INTERROGATORY 19:  Is it your position that Lt. Williams is lying about the results of his investigation (exhibit F-2A), when he specifically and unequivocally names you as the mailroom screener who, "admitted that he honestly missed your legal mail and processed it with regular mail"?

OBJECTION:  Defendant objects to the extent that this discovery requests [sic] calls for speculation concerning the veracity of another individual's statements. Without waiving this objection or any of the general objections and reservations, Defendant answers as follows:

**ANSWER:** The letter that I returned with the post it note on it did have a cash slip attached. I do not know any [of] the details of what was investigated. My understanding is that this incident was investigated by Inspector Gillespie. If I was questioned at all about the incident I would have said the envelope originally had a cash slip attached to it. It is my understanding that the envelope given in the inspection no longer had the cash slip during the investigation. I do not believe that anyone involved is lying; I do believe that not all the information was provided in the investigation to give a full, complete, and accurate response.

INTERROGATORY 20: Is it your position that Lt. Williams is lying about the results of his investigation (exhibit F-2A), when he specifically and unequivocally names you as the mailroom screener who, "admitted that he honestly missed your legal mail and processed it with regular mail"?

**OBJECTION:** Defendant objects to the extent that this discovery requests [sic] calls for speculation concerning the veracity of another individual's statements. Without waiving this objection or any of the general objections and reservations, Defendant answers as follows:

ANSWER: The response Lt. Williams gave was not true. I stated that I did write the lock on the envelope but did not scan that mail. Lt. Williams also stated that I had only been down there a month and that was not true because it was my First week down there.

(ECF No. 142-9 at PAGEID ## 1578–79.)

Although in his Affidavit, Sowers avers that he did not open Plaintiff's legal mail on January 14, 2016, Defendant Sowers' sworn discovery responses are more ambiguous. One response provides that Defendant Sowers does not believe that Lieutenant Williams was lying when that official stated that Defendant Sowers opened Plaintiff's legal mail and another response states that what Lieutenant Williams said was not true. Defendants nevertheless assert that "[t]he difference in evidence is sworn statements against a response to an informal complaint resolution with inaccurate information. The sworn statements carry more weight in a summary judgment analysis." (ECF No. 152 at PAGEID # 1670.) Defendants' argument misses the mark. This is not a matter of comparing conflicting information in the informal complaint resolution

and an affidavit; instead, the record is ambiguous when considering all of Defendant Sowers'

sworn statements in the Sowers Affidavit and his discovery responses given under oath. The

Court's function is not "to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986); *cf. Cboss, Inc. v. Zerbonia*, No. 4:09-cv-00168, 2010 WL 3835092, at *3 (N.D.

Ohio Sept. 29, 2010) ("The fact that both parties have moved for summary judgment does not

mean that the Court must rule in favor of one side or the other; summary judgment in favor of

either party is not proper if disputes remain as to material facts."). After carefully considering

this evidence, the undersigned finds that a genuine issue of material fact exists as to whether

Defendant Sowers took an adverse action by opening Plaintiff's legal mail outside of Plaintiff's

presence on January 14, 2016.

## 2.    Causation/motivation

Defendants also argue that there is no causal connection between the opening of

Plaintiff's legal mail and Plaintiff's use of the grievance system because Defendant Sowers

began working as a mail clerk screener on January 11, 2016 (*see* Sowers Affidavit, ¶ 3), and

therefore Plaintiff's prior complaints about the MaCI mailroom could not included Defendant

Sowers. The filing of these complaints therefore does not establish a temporal proximity to

create an inference of retaliatory motive. Based on this record, Plaintiff has not presented

evidence tending to prove the third element, *i.e.*, causation/motivation, to his claim.

Accordingly, as it relates to Plaintiff's retaliation claim against Defendant Sowers (Sixth Cause

of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No.

139) be **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be

**DENIED**.

**G.      Retaliation and Denial of Access Claims Against Defendants Fultz and Sowers (Seventh Cause of Action)**

Plaintiff alleges that Defendants Fultz and Sowers retaliated against him and denied him access to the courts when Defendant Fultz took possession of Plaintiff's Section 1983 complaint and "enabled" Defendant Sowers to destroy the complaint.  (Am. Compl., ¶¶ 50–55.)  More specifically, Plaintiff alleges that on February 8, 2016, Defendant Fultz, MaCI secretary, notarized his Section 1983 lawsuit against several MaCI employees and his six-month cashier statement.  (*Id*. at ¶ 50.)  After Defendant Fultz notarized the documents, she placed them in the locked mailbox in MaCI's Administrative Building.  (Affidavit of Melanie Fultz, ECF No. 139-9 ("Fultz Affidavit"), ¶ 7.)  Thereafter, the Section 1983 complaint was not mailed out and not found.  (Plaintiff Affidavit, ¶ 28; Plaintiff's Exhibit G-4, ECF No. 142-10 at PAGEID # 1584 (copy of Disposition of Grievance).)

**1.      Retaliation**

The parties agree that Plaintiff's attempt to file a civil rights lawsuit is protected conduct. (ECF No. 139 at PAGEID # 1457; ECF No. 152 at PAGEID # 1671; ECF No. 155 at PAGEID # 1769.)  The parties dispute, however, whether Defendant Fultz or Defendant Sowers took an adverse action against Plaintiff.

**a.      Defendant Fultz**

Plaintiff contends that Defendant Fultz took an adverse action against him by taking possession of his Section 1983 complaint under the false assertion that inmates were not allowed to possess the six-month cashier statement and taking his Section 1983 complaint to the administration building instead of the mailroom.  (*See*, *e.g.*, ECF No. 142 at PAGEID # 1522–

23; ECF No. 155 at PAGEID # 1769–70; Plaintiff Affidavit, ¶ 27.) According to Defendant Fultz, however, there was no adverse action when she took possession of the Section 1983 lawsuit because inmates are not allowed to possess their six-month cashier statement and there is no procedure that prohibits placing inmate mail in the locked Administration Building mailbox. (Fultz Affidavit, ¶¶ 7, 9; *see also* Plaintiff's Exhibit G-16, ECF No. 142-10 at PAGEID # 1586 (providing, *inter alia*, that "[t]he Mailroom Clerk/Screener will pick up all outgoing mail in the W-Building (Administration).").)

After carefully reviewing the record, the undersigned finds that a genuine issue of material fact exists as to whether Defendant Fultz took an adverse action against Plaintiff. While Defendant Fultz avers that inmates are not allowed to possess their six-month cashier statement (*id*. at ¶ 7), Plaintiff presents the MaCI's cashier manual that authorizes inmates to obtain two free copies of such statement per year (Plaintiff's Exhibit AA, AA-2, AA-3 at PAGEID ## 1534–36). In addition, Plaintiff's grievance complaining of Defendant Fultz's failure to perform her job duties was granted and the problem noted. (Plaintiff's Exhibit G-4, ECF No. 142-10 at PAGEID # 1584.) Moreover, the parties agree that Plaintiff's Section 1983 was never mailed out or located. Considering that the deterrent effect of the adverse action need not be great in order to be actionable[,]" *Lappin*, 630 F.3d at 473, the undersigned cannot conclude, based on the present record, that taking possession of Plaintiff's Section 1983 complaint and six-month cashier statement without cause and ultimate loss of this property is inconsequential or *de minimis*. *See Berkshire v. Beauvais*, 928 F.3d 520, 531 (6th Cir. 2019); *Holzemer v. City of Memphis*, 621 F.3d 512, 524 (6th Cir. 2010) ("[T]he adverse-action requirement 'is intended to weed out only inconsequential actions.'") (quoting *Thaddeus-X*, 175 F.3d at 398); *cf. Maben*, 887

57

F.3d at 267; *Bell v. Johnson*, 308 F.3d 594, 606–07 (6th Cir. 2002) (finding that confiscation of legal papers and other property is sufficiently adverse). Based on this record, the undersigned finds that a genuine issue of material fact exists as to whether Defendant Fultz took an adverse action against Plaintiff through her actions.

Turning to the causal connection element of Plaintiff's retaliation claim, Plaintiff contends that there is a causal connection between Plaintiff's protected activity and Defendant Fultz's adverse action. As previously discussed, in determining whether there exists a causal connection existed between the protected conduct and the adverse action, courts must consider "the totality of the circumstances to determine whether an inference of retaliatory motive [may] be drawn." *Holzemer*, 621 F.3d at 526. To establish causation, a plaintiff must show only "that his protected conduct was a motivating factor" for the retaliatory action. *Maben*, 887 F.3d at 262 (6th Cir. 2018) (citations omitted). "'[T]he motivating factor prong of a First Amendment retaliation case can be supported by circumstantial evidence, with temporal proximity aiding in the analysis.'" *Campbell v. Mack*, 777 F. App'x 122, 134–35 (6th Cir. 2019) (quoting *Spencer v. City of Catlettsburg*, 506 F. App'x 392, 396 (6th Cir. 2012)). In addition, "[t]emporal proximity between the protected conduct and the adverse action by the state actor 'alone may be significant enough to constitute indirect evidence . . . to create an inference of retaliatory motive.'" *Paige v. Coyner*, 614 F.3d 273, 283 (6th Cir. 2010) (quoting *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004)); *see also Maben*, 887 F.3d at 268 ("Additionally, there is a suspicious temporal proximity between Maben's grievance and the alleged retaliatory action. This Court has 'previously considered the temporal proximity between protected conduct and retaliatory acts as

creating an inference of retaliatory motive.'") (quoting *King v. Zamiara*, 680 F.3d 686, 695–96 (6th Cir. 2012)); *Montell*, 757 F.3d at 505.

Here, the undersigned finds that there exists a genuine issue of material fact as to the causal connection. Defendant Fultz admits that she must inspect signed documents, including inmate legal work, prior to actually notarizing any document. (Fultz Affidavit, ¶¶ 4–5.) Plaintiff presented his Section 1983 complaint to Defendant Fultz (Plaintiff Affidavit, ¶ 27) and she admits that she notarized Plaintiff's legal documents, including "the documents referenced in his Seventh Cause of Action[,]" such as his Section 1983 lawsuit that named six MaCI employees as defendants on the cover page. (Fultz Affidavit, ¶¶ 6–7; Am. Compl., ¶ 51.) After notarizing these documents, Defendant Fultz then took possession of the Section 1983 and placed is in the Administrative Building's mailbox. (Fultz Affidavit, ¶ 7.) The temporal proximity of presenting the Section 1983 complaint and Defendant Fultz's actions and the totality of the circumstances are sufficient to establish an inference of a retaliatory motive for the reasons previously discussed. *See Paige*, 614 F.3d at 283; *Maben*, 887 F.3d at 268; *Montell*, 757 F.3d at 505; *Holzemer*, 621 F.3d at 526.

"'Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant.'" *Maben*, 887 F.3d at 267 (quoting *Thaddeus–X*, 175 F.3d at 399). "'If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.'" *Id*. (quoting *Thaddeus–X*, 175 F.3d at 399). Here, Defendant Fultz offers no argument on this issue. (*See generally* ECF Nos. 139, 152.)

Defendant Fultz does argue, however, that she is entitled to qualified immunity.  As previously, noted, however, "[t]he immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights."  *Moore v. Zalewski*, No. 2:16-cv-91, 2018 WL 3203606, at *8 (W.D. Mich. Apr. 30, 2018) (citing *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991)), *adopted by* 2018 WL 3156207 (W.D. Mich. June 28, 2018).  For these reasons, the undersigned cannot conclude that Defendant Fultz is entitled to qualified immunity on this claim.

Accordingly, as it relates to Plaintiff's retaliation claim against Defendant Fultz (Seventh Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**.

### b.      Defendant Sowers

Plaintiff contends that on February 9, 2016, Defendant Sowers picked up his Section 1983 complaint and that the complaint was never found again.  (ECF No. 142 at PAGEID ## 1524–26; ECF No. 155 at PAGEID # 1771; ECF No. 160 at PAGEID # 1881.)  Defendant Sowers, however, avers that he "never destroyed any outgoing inmate mail while working as a mail clerk screener" and "did not destroy Plaintiff's mail that he claims went missing on February 8, 2016."  (Sowers Affidavit, ¶ 8.)  While Plaintiff avers under oath that Defendant Sowers did pick up his Section 1983 civil rights lawsuit on February 9, 2016 (Plaintiff Affidavit, ¶ 28), this statement is not based on Plaintiff's actual knowledge.  *See* Fed. R. Civ. P. 56(c)(4) (requiring that affidavits or declarations be made on personal knowledge); *Valley Force Ins. Co.*

*v. Fisher Klosterman, Inc.*, 2016 WL 8201164, at *1 (S.D. Ohio Mar. 30, 2016) ("Affidavits based on mere information and belief, as opposed to facts the affiant knows to be true, are not proper.") (citing *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007)). Plaintiff does not say that he actually saw Defendant Sowers pick up the lawsuit. Instead, Plaintiff's Motion and briefs reveal that Plaintiff speculates that Defendant Sowers must have picked up the lawsuit because Defendant Sowers was working with one other person, a Mr. Conn (against whom Plaintiff had not filed any complaints), on February 9, 2016, and that Defendant Sowers therefore had the opportunity, means, and motive to take the lawsuit. (ECF No. 142 at PAGEID ## 1524–25; ECF No. 155 at PAGEID # 1771; ECF No. 160 at PAGEID # 1881.) As noted earlier, speculation is insufficient to create a genuine issue of material fact at the summary judgment stage. *See Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017). Accordingly, as it relates to the retaliation claim against Defendant Sowers (Seventh Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and that Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**.

### 2. Denial of Access to the Courts

Plaintiff also asserts a claim for denial of access to the courts against Defendants Fultz and Sowers based on his Section 1983 complaint. This right of access prohibits "state prison officials from actively interfering with inmates' attempts to prepare legal documents[.]" *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("Prison officials may not erect any barriers that impede an inmate's access to the courts."). However, the right "extends to direct appeals, habeas corpus applications, and civil rights claims

only." *Thaddeus-x*, 175 F.3d at 391. To prevail on this claim, the inmate must "show actual injury." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Thaddeus–X*, 175 F.3d at 394). In other words, the inmate must demonstrate "that a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 353. "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)). Finally, the inmate must show that "more than mere negligence by the state actor caused the injury[.]" *Sims v. Landrum*, 170 F. App'x 954, 956 (6th Cir. 2006) (citations omitted).

For the reasons previously discussed, Plaintiff's denial of access claim against Defendant Sowers must fail because there is no evidence Defendant Sowers picked up or destroyed Plaintiff's Section 1983 lawsuit. For these reasons, as it relates to Plaintiff's denial of access claim against Defendant Sowers (Seventh Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and that Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**.

Defendant Fultz contends that the claim against her must fail, too, because any loss of the mail was inadvertently lost and the result of negligence, which is insufficient to establish a constitutional harm. (ECF No. 139 at PAGEID ## 1455–56; ECF No. 152 at PAGEID ## 1670–71.) However, for the reasons detailed above, there is a genuine issue of material fact as to whether Defendant Fultz improperly took possession of Plaintiff's Section 1983 complaint, which was never found and not filed. Therefore, a genuine issue of material fact exists as to whether Defendant Fultz interfered with or erected barriers with regard to that lawsuit. *See*

*Lewis*, 518 U.S. at 350 *Kensu*, 87 F.3d at 175.  Although Defendant Fultz goes on to argue she is entitled to qualified immunity, the Court should not resolve the immunity issue where genuine issues of material fact exist.  *See Moore*, 2018 WL 3203606, at *8.  For these reasons, the undersigned cannot conclude that Defendant Fultz is entitled to qualified immunity on this claim.

Accordingly, as it relates to Plaintiff's denial of access claim against Defendant Fultz (Seventh Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**.

### H.     Retaliation and Denial of Access Claims Against Defendant Sowers (Eighth Cause of Action)

Plaintiff alleges that Defendant Sowers retaliated against him and denied him access to the courts when Defendant Sowers held onto his outgoing legal mail submitted on February 8, 2016, and returned it to him on February 16, 2016, with a note taped to it written by Defendant Sowers stating the wrong hours for sending legal mail.  (Am. Compl., ¶¶ 56–61.)

#### 1.     Retaliation

The parties do not dispute that Plaintiff engaged in protected activity when he used the inmate grievance system leading up to this event.  (ECF No. 142 at PAGEID # 1526; ECF No. 152 at PAGEID # 1674.)  Defendant Sowers, however, denies that he took an adverse action against Plaintiff.  Specifically, he admits that he did write on the note the incorrect hours for sending legal mail that was attached to Plaintiff's returned outgoing mail but avers that he mistakenly wrote the wrong hours because he was working on two separate compounds. (Sowers Affidavit, ¶ 9; Plaintiff's Exhibit H-1, ECF No. 142-11 at PAGEID # 1589 (copy of envelope with note).)  Defendant Sowers also avers that Plaintiff's outgoing mail had a cash slip

attached to it when he received it, which is contrary to the policy that requires mail with a cash slip be processed in person. (Sowers Affidavit, ¶ 10.) Defendant Sowers returned Plaintiff's outgoing mail to him because Plaintiff did not follow proper procedure by failing to process the cash slip in person prior to sending the mail. (*Id.* at ¶ 11.)

Plaintiff, however, has presented evidence that his outgoing legal mail (which was a request for appointment of counsel) should not have been returned to him. (Plaintiff Affidavit, ¶ 29; Plaintiff's Exhibit H-4, ECF No. 142-11 at PAGEID # 1592.) Although Defendant Sowers avers that writing the wrong legal mail hours on the note was a mistake resulting from working in separate compounds and that he did not retaliate against Plaintiff or tamper with his mail (*id.* at ¶¶ 12–13), the undersigned at this stage simply determines whether withholding Plaintiff's legal mail and providing wrong information about the hours for sending legal mail would deter a person of ordinary firmness from continuing to engage in that conduct. *Berkshire*, 928 F.3d at 531. Considering that the deterrent effect of the adverse action need not be great in order to be actionable[,]" *Lappin*, 630 F.3d at 473, the undersigned cannot conclude, based on the present record, that withholding Plaintiff's legal mail and misinforming him of the permitted hours in which to send legal mail are inconsequential or *de minimis*. *See id.*; *Maben*, 887 F.3d at 267; *Bell v. Johnson*, 308 F.3d 594, 606–07 (6th Cir. 2002) (finding that confiscation of legal papers and other property is sufficiently adverse) *Holzemer*, 621 F.3d at 524 (citations omitted). Accordingly, Plaintiff has met the adverse action element of his claim.

Plaintiff contends that he had filed complaints against the MaCI mailroom and Defendant Sowers personally prior to Defendant Sowers returning Plaintiff's mail on February 16, 2016. (ECF No. 155 at PAGEID ## 1775–76; Plaintiff Affidavit, ¶¶ 25–26.) Defendant Sowers denies

that there is a causal connection between Plaintiff's protected activity and these actions, arguing, *inter alia*, that "the Sixth Circuit has held that temporal proximity, standing alone, is insufficient to establish causation in the retaliation context." (ECF No. 152 at PAGEID # 1674 (citing *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 505 (6th Cir. 2014) (citations omitted).)

Defendant Sowers' argument is not well taken. Contrary to his assertion, *Montell* establishes that the Sixth Circuit has "held that temporal proximity alone can be enough." *Montell*, 757 F.3d at 505 (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)); *see also Maben*, 887 F.3d at 268 ("Additionally, there is a suspicious temporal proximity between Maben's grievance and the alleged retaliatory action. This Court has 'previously considered the temporal proximity between protected conduct and retaliatory acts as creating an inference of retaliatory motive.'") (quoting *King*, 680 F.3d at 695–96). The undersigned finds that this temporal proximity as well as the totality of the circumstances presented in the record (including evidence that Plaintiff's outgoing mail should not have been returned to him (Plaintiff's Exhibit H-4, ECF No. 142-11 at PAGEID # 1592)), are sufficient to create an inference of retaliatory motive. *See Paige*, 614 F.3d at 283; *Maben*, 887 F.3d at 268; *Montell*, 757 F.3d at 505; *Holzemer*, 621 F.3d at 526.

Defendant Sowers has not argued or shown that he would have taken the same action in the absence of Plaintiff's protected activity. *Maben*, 887 F.3d at 267. He does argue, however, that he is entitled to qualified immunity on this claim. Because there is a genuine issue of material fact as to whether Defendant Sowers retaliated against Plaintiff, the undersigned cannot conclude that Defendant Sowers is entitled to qualified immunity on this claim. *See Moore*, 2018 WL 3203606, at *8.

Accordingly, as it relates to Plaintiff's retaliation claim against Defendant Sowers (Eighth Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**.

## 2. Denial of access

Plaintiff also asserts a claim for denial of access to the courts against Defendant Sowers based on the same actions. As previously noted, the right to access the courts "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-x*, 175 F.3d at 391. To prevail on this claim, the inmate must "show actual injury." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Thaddeus–X*, 175 F.3d at 394). In other words, the inmate must demonstrate "that a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 353. "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)). Finally, the inmate must show that "more than mere negligence by the state actor caused the injury[.]" *Sims v. Landrum*, 170 F. App'x 954, 956 (6th Cir. 2006) (citations omitted).

Here, Plaintiff provides no evidence that the outgoing legal mail at issue in this claim related to a direct appeal, a habeas corpus application or a civil rights claim. Instead, Plaintiff avers that the legal mail was a request for appointment of counsel for unidentified reason or action. (Plaintiff Affidavit, ¶ 29.) Moreover, Plaintiff has not shown that "a nonfrivolous legal claim had been frustrated or was being impeded[,]" *Lewis*, 518 U.S. at 353, such as "having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."

*Harbin-Bey*, 420 F.3d at 578. Based on this record, the undersigned cannot conclude that Defendant Sowers denied Plaintiff access to the courts by withholding his legal mail containing a request for appointment of counsel. *See Gibson v. Rose*, No. 1:12-cv-1509, 2012 WL 2995484, at *6 (N.D. Ohio July 23, 2012) (dismissing action where "Plaintiff fails to provide sufficient allegations suggesting that his lawsuit or legal work falls into one of these three categories [direct appeals, habeas corpus applications, and civil rights actions]. Moreover, he fails to allege any facts to suggest his lawsuit or legal work was non-frivolous"); *cf. Thaddeus-x*, 175 F.3d at 391.

For these reasons, as it relates to Plaintiff's denial of access claim against Defendant Sowers (Eighth Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and that Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**.

## I. Equal Protection Claims Against

The Amended Complaint apparently contains claims for violation of the Equal Protection Clause against Defendants Hays and Sowers. Initially, the Amended Complaint specifically identifies the "Second Cause of Action" against Defendant Hays as only "Retaliation[.]" (Am. Compl., PAGEID # 504) Later, however, the Amended Complaint identifies his "Second Legal Claim" as "Retaliation / Equal protection[.]" (*Id*. at ¶ 75.) Similarly, the Seventh and Eighth Causes of Action heading identify Plaintiff's claims against Defendant Sowers as retaliation and denial of access. (*Id*. at PAGEID ## 508–09.) However, later the Amended Complaint identifies the Seventh and Eighth Legal Claims as also asserting equal protection violations. (*Id*. at ¶¶ 8 – 81.)

67

Defendants apparently understood Plaintiff to assert an equal protection claim in the original Complaint. (*See* ECF No. 139 at PAGEID # 1427.) Because Defendants do not address any equal protection claim in their Motion for Summary Judgment (*see generally id.*), it appears that Defendants do not interpret the Amended Complaint as asserting an equal protection claim against Defendant Hays or Defendant Sowers. However, in his Motion for Partial Summary Judgment, Plaintiff specifically "accuses defendants Hays and Sowers of the denial of equal protection under the law[,]" yet Plaintiff does not move for summary judgment on this claim. (ECF No. 142 at PAGEID # 1496.) Defendants do not address an equal protection claim against Defendant Hays in their brief opposing Plaintiff's Motion for Partial Summary Judgment. (ECF No. 152.)

Construing the Amended Complaint liberally, *see Olivares v. Michigan Worker's Comp. Agency*, No. 18-2369, 2019 WL 2299250, at *2 (6th Cir. Apr. 16, 2019) (citations omitted), the undersigned finds that the Amended Complaint asserts equal protection claims against Defendant Hays and Sowers based on the same allegations set forth in the Second, Seventh, and Eighth Causes of Action. (*See* Am. Compl., ¶¶ 24–33, 50–61, 75, 80–81.) Because neither Defendants nor Plaintiff move for summary judgment on these claim (*see generally* ECF Nos. 139 and 142), these claims remains pending.

## V.

For all these reasons, Plaintiff's Motion to Compel (ECF No. 132), Plaintiff's Motion to Disqualify Counsel (ECF No. 133), and Plaintiff's Request for Sanctions (ECF No. 144) are **DENIED**. Plaintiff's Motion to Strike Summary Judgment Affidavit (ECF No. 154) is **DENIED AS MOOT**.

It is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) **GRANTED IN PART AND DENIED IN PART** consistent with the foregoing and that Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**. Specifically, it is **RECOMMENDED** that:

1.      As to Plaintiff's access to the courts claim against Defendants Lovette and Ricker related to his Supreme Court merit brief (First Cause of Action), Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and that Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**;

2.      As to Plaintiff's retaliation claim against Defendants Lovette and Ricker (First Cause of Action), both Defendants' Motion for Summary Judgment (ECF No. 139) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**;

3.      As to Plaintiff's retaliation claim against Defendant Hays (Second Cause of Action), Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and that Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**;

4.      As to Plaintiff's retaliation claim against Defendant McCrary (Third Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**;

5.      As to his retaliation claim against Defendant Chamberlin (Third Cause of Action), it is **RECOMMENDED** that both Defendants' Motion for Summary Judgment (ECF No. 139) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**;

6. As to Plaintiff's retaliation claim against Defendant Ricker (Fourth Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED**;

7. As to Plaintiff's retaliation claim against Defendant Chamberlin (Fifth Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED**;

8. As to his retaliation claim against Defendant Sowers (Sixth Cause of Action), it is **RECOMMENDED** that both Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and that Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**;

9. As to Plaintiff's retaliation claim against Defendant Fultz (Seventh Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**;

10. As to Plaintiff's retaliation claim against Defendant Sowers (Seventh Cause of Action), it is **RECOMMENDED** that both Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and that Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**;

11. As to Plaintiff's denial of access to courts claim against Defendant Fultz (Seventh Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**;

12.     As to Plaintiff's denial of access to courts claim against Defendant Sowers (Seventh Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**;

13.     As to Plaintiff's retaliation claim against Defendant Sowers (Eighth Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**;

14.     As to Plaintiff's denial of access claim against Defendant Sowers (Eighth Cause of Action), it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 139) be **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 142) be **DENIED**.

In sum, this recommendation therefore leaves pending Plaintiff's retaliation claim against Defendants Lovette and Ricker (First Cause of Action); retaliation claim against Defendant Chamberlin (Third Cause of Action); retaliation and denial of access claims against Defendant Fultz (Seventh Cause of Action); retaliation claim against Defendant Sowers (Eighth Cause of Action); equal protection claims against Defendants Hays and Sowers (Second, Seventh, and Eighth Causes of Action).

## <u>PROCEDURE ON OBJECTIONS</u>

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.


Date: February 11, 2020                          /s/ *Elizabeth A. Preston Deavers*
                                        ELIZABETH A. PRESTON DEAVERS
                                        CHIEF UNITED STATES MAGISTRATE JUDGE