IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LIONEL HARRIS,** | |
| Plaintiff, | Case No. 2:16-cv-888 |
| v. | Judge James L. Graham |
| **AARON SOWERS,** *et al.*, | Magistrate Judge<br>Elizabeth A. Preston Deavers |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on two separate issues: 1) whether Plaintiff's First and Seventh Causes of Action against Defendants Michelle Lovette, Cynthia Ricker, and Melanie Fultz should be dismissed on the pleadings pursuant to the Sixth Circuit's decision in *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities,* 825 F.2d 946 (6th Cir. 1987) (en banc) and 2) whether the Court should amend its November 20, 2020 Order (ECF No. 169) pursuant to Fed. R. Civ. 54(b) to grant summary judgment to Defendants Jacob Hays and Aaron Sowers on Plaintiff's equal protection claims. These issues are fully briefed and ripe for adjudication.

For the reasons that follow, Defendants' Motion for Judgment on the Pleadings Pursuant to Order [Doc #204] (ECF No. 206) is **GRANTED**. The Court also amends its November 20, 2020 Order (ECF No. 169) to **GRANT** summary judgment to Hays on the equal protection portion of Plaintiff's Second Legal Claim (Am. Compl. ¶ 75) and to **GRANT** summary judgment to Sowers on the equal protection portions of Plaintiff's Seventh and Eighth Legal Claims (*Id.* at ¶¶ 80–81).

1

**I.      BACKGROUND**

Plaintiff Lionel Harris, an Ohio inmate formerly incarcerated at the Madison Correctional Institution ("MaCI"), filed this action pursuant to 42 U.S.C. § 1983 against several MaCI employees: Mailroom Screeners Aaron Sowers, Jacob Hays, and Mary McCrary; Melanie Futz, a secretary/notary public; Lieutenant Julia Chamberlin; Financial Associate Supervisor Cynthia Ricker; and Cashier Michelle Lovette (collectively, "Defendants").  Plaintiff alleges Defendants violated his constitutional rights in connection with their handling of and alleged destruction or theft of his mail and that they retaliated against him for his use and attempted use of the prison grievance system.

**II.     STANDARDS OF REVIEW**

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The standard applied to motions for judgment on the pleadings is the same standard applicable to motions to dismiss under Rule 12(b)(6).  *See Hindel v. Husted,* 875 F.3d 344, 346 (6th Cir. 2017).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted).  However, the court need not accept as true legal conclusions or unwarranted factual inferences.  *Id.* (citing *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory."  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007).  "The

2

factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Township of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

Under Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

### III. DISCUSSION

#### A. The *Leaman* Doctrine

Defendants move for judgment on the pleadings arguing that Plaintiff's claims against Lovette, Ricker, and Fultz are barred under the *Leaman* doctrine, because Plaintiff waived his right to file federal claims against these defendants when he filed suit against the Ohio Department of Rehabilitation and Corrections ("ODRC") in the Ohio Court of Claims alleging the same facts and occurrences.

Under Ohio Rev. Code § 2743.02(A)(1), "filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, that the filing party has against any officer or employee." The Ohio legislature intended for this waiver to extend to federal causes of action. *Leaman*, 825 F.2d at 952. Section 2743.02's waiver of suits "'against any state officer or employee,' provides a quid pro quo for plaintiffs []: 'The state consents to be sued in exchange for a plaintiff's waiver of claims against the state's employees.'" *Portis v. Ohio*, 141 F.3d 632, 634 (6th Cir. 1998) (quoting *Thomson v. Harmony*, 65 F.3d 1314, 1318 (6th Cir.

3

1995)). "The Sixth Circuit has consistently applied *Leaman* to bar plaintiffs from bringing suit in federal court against a state employee after bringing suit against the state in the Court of Claims based on the same claim." *Plinton v. Cty. of Summit,* 540 F.3d 459, 463 (6th Cir. 2008); *Turker v. Ohio Dep't of Rehab. & Corr.,* 157 F.3d 453, 457 (6th Cir. 1998) ("where a federal court plaintiff files a related action in the Court of Claims, she has waived her right to sue state officials for monetary damages[.]")

On July 12, 2016, Plaintiff filed a pro se complaint against the ODRC in the Ohio Court of Claims alleging that MaCI employees failed to properly process two pieces of his legal mail on two separate occasions.[1] Specifically, Plaintiff alleged that on August 4, 2015 he gave his Ohio Supreme Court merit brief to the MaCI mailroom. Plaintiff further alleged that instead of mailing his merit brief within forty-eight hours per ODRC policy, defendants carelessly withheld his legal mail for six days, which caused him to miss the Ohio Supreme Court's filing deadline. Plaintiff also alleged that on February 8, 2016, his federal civil rights lawsuit against MaCI employees was lost and never mailed out.

Here, Plaintiff's First and Seventh Causes of Action against Lovette, Ricker, and Fultz are virtually identical. In the case at bar, Plaintiff alleges that he submitted his Ohio Supreme Court merit brief to the MaCI mailroom on August 4, 2015 (Am. Compl. ¶ 17.) Plaintiff further alleges that Lovette and Ricker intentionally withheld his merit brief to the Ohio Supreme Court for six days, and as a result, caused his brief to arrive late. (*Id.* at ¶¶ 18–19.) Plaintiff also alleges that on February 8, 2016, he gave Fultz his civil rights lawsuit against several MaCI employees for

---

[1] Under Federal Rule of Evidence 201, this Court takes judicial notice of Plaintiff's Ohio Court of Claims case, Case No. 2016-00534. "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (collecting cases).

4

notarization and mailing. (*Id.* at ¶¶ 50–51.) Plaintiff claims that Fultz took his lawsuit to the administration building where she allegedly placed it in a lockbox for pick up. (*Id.* at ¶ 53.) Plaintiff further claims that MaCI mailroom employees never received the lawsuit, and that the missing piece of legal mail was never found. (*Id.*)

Plaintiff, now proceeding with the assistance of counsel, does not contest Defendants' assertion that his Ohio Court of Claims suit and his federal lawsuit are based on the same acts or omissions. Plaintiff instead takes issue with the Court's consideration of the *Leaman* doctrine's application to Plaintiff's claims against Lovette, Ricker, and Fultz since Defendants did not brief this issue at the summary judgment stage. After acknowledging that Defendants raised this affirmative defense in their Answer, the Court invited briefing on this threshold issue. *See Malenda v. Gray*, No. 2:19-cv-167, 2019 U.S. Dist. LEXIS 188719, at *6 (S.D. Ohio Oct. 31, 2019) (noting that the *Leaman* doctrine constitutes a threshold issue).

Plaintiff argues that his Court of Claims filing cannot result in a complete waiver of his claims against Lovette, Ricker, and Fultz, because constitutional claims are not actionable in the Court of Claims. But whether Plaintiff's claims against the ODRC survived post-filing is immaterial—it is the act of bringing a claim in the Court of Claims, regardless of its success, that triggers the *Leaman* doctrine's complete waiver. *Thomson,* 65 F.3d at 1319; *Thomas v. Ohio Dep't of Rehab. & Corr.,* 36 F. Supp. 2d 1005, 1008, n.3 (S.D. Ohio 1999) ("The language of the statute, as well as that of the Sixth Circuit cases of *Leaman, Thomson* and *Turker* indicate that filing, alone, is sufficient to trigger the waiver.")

Plaintiff also argues that he did not make a knowing and intelligent waiver of his right to file suit here. For *Leaman* to apply, a plaintiff's choice to pursue relief in the Ohio Court of Claims must be "knowing, intelligent, and voluntary." *Leaman,* 825 F.2d at 956. In *Leaman,* the Sixth

5

Circuit determined that Leaman made a "knowing, intelligent, and voluntary" waiver of her right to bring claims against state employees, because she was represented by competent counsel when she filed suit in the Ohio Court of Claims, and her counsel was therefore presumed to know what the Court of Claims Act said. *Id.* Such a presumption does not automatically extend to pro se litigants. *See Kajfasz v. Haviland*, 55 F. App'x 719, 722 (6th Cir. 2003) (determining that "there can be no presumptive finding" that a pro se litigant made a knowing, intelligent, and voluntary waiver of "his § 1983 claim in federal court when he filed suit in the Ohio Court of Claims.") Instead, district courts must make a factual determination that the pro se litigant "knowingly, intelligently, and voluntarily waived his [or her] right to proceed in federal court by filing in the Ohio Court of Claims." *Id.*

In making this determination, courts consider "the pro se plaintiff's prior litigation experience, the coherency of his filings in both the federal and Court of Claims matters, and whether the litigant referenced the statutory waiver provision in the filings." *Troche v. Crabtree*, 2014 U.S. Dist. LEXIS 72626, 2014 WL 2211012, at *3 (S.D. Ohio May 28, 2014). A pro se litigant knowingly waives any cause of action in federal court if he has "an above-average understanding of the law for a *pro se* litigant." *Williams v. Smith*, 2006 U.S. Dist. LEXIS 52864, 2006 WL 2192470, at *10 (S.D. Ohio Aug. 1, 2006).

The Court has considered these factors and finds that Plaintiff made a knowing, intelligent, and voluntary waiver of his right to proceed in federal court by filing an action in the Ohio Court of Claims. Prior to filing in the Court of Claims and here, Plaintiff filed a mandamus action in state court. *State ex rel. Harris v. Hamilton Cty. Court of Common Pleas,* 2014-Ohio-1612, 139 OhioSt.3d 149, 9 N.E.3d 1057. Plaintiff also filed a habeas petition on March 20, 2015 in the Twelfth District Court of Appeals, Case No. CA2015-03-012. (ECF No. 139-1.) Plaintiff's

6

complaints in both the instant case and the Court of Claims are typewritten, intelligible, and coherently organized and involve nearly identical allegations concerning acts or omissions that transpired on August 4, 2015 and February 8, 2016.

In the instant case, Plaintiff's Amended Complaint is well organized with numerous headings and detailed factual allegations and cites to the relevant statutes for his constitutional claims and the Court's jurisdiction. *Brooks v. McCoy,* 1:15-CV-39, 2015 WL 4538512, at *4 (S.D. Ohio July 27, 2015) (discussing plaintiff's identification of "the proper federal jurisdictional statutes, as well as the relevant federal statute for his constitutional claims" as indicating an experienced litigator). Though Plaintiff did not specifically reference Ohio Rev. Code § 2743.02(A)(1) in his Court of Claims complaint, he only sued the ODRC, rather than the individual MaCI employees, even though he was aware of their identities as evidenced by the exhibits attached to his complaint. This "evinces a knowledge that the waiver statute only permits actions against the state."[2] *Jones v. Ohio*, No. 1:19-CV-1913, 2020 U.S. Dist. LEXIS 9004, at *6 (N.D. Ohio Jan. 17, 2020); *Brooks,* 2015 WL 4538512, at *4, n.2 ("Plaintiff's naming only a state agency, rather than an individual, pursuant to the Court of Claims Act further demonstrates his familiarity with that statute.").

Furthermore, while litigating his Court of Claims case, Plaintiff filed a well-organized, intelligible, and coherent memorandum in opposition to the ODRC's motion to dismiss. There, Plaintiff discussed a federal case from this circuit where another prisoner's legal mail was not processed in accordance with the applicable policy directive, and as a result, his application for leave to appeal was rejected as untimely. Plaintiff reasoned "since the federal court in that case found that the circumstances described do not rise to the level of the constitutional violation of

---

[2] "The only defendant in original actions in the court of claims is the state." Ohio Rev. Code § 2743.02(E).

7

denial of access to court and is a 'negligence claim', Plaintiff relied on that decision when he decided to file a negligence claim in the Court of Claims instead of the federal courts." Pl.'s Mot. in Opp. to Def.'s Mot. to Dismiss 3, Ohio Court of Claims Case No. 2016-00534 (Aug. 29, 2016). This statement not only evinces a "an above-average understanding of the law for a *pro se* litigant," it also demonstrates that Plaintiff intelligently evaluated the facts and circumstances of his case and voluntarily chose to file in the Court of Claims rather than federal court.

The Court therefore finds that Plaintiff made a knowing, intelligent, and voluntary waiver of his federal claims against Lovette, Ricker, and Fultz when he filed suit against the ODRC in the Ohio Court of Claims based on the same acts or omissions. Accordingly, the Court finds that Plaintiff has not pled any facts showing that he is entitled to relief against these defendants, and Defendants' Motion for Judgment on the Pleadings is granted.

### B. Equal Protection Claims

Also before the Court is the issue of whether to grant summary judgment to Defendants Jacob Hays and Aaron Sowers on Plaintiff's equal protection claims.

At the parties' final pretrial conference, the Court proposed amending its previous summary judgment Order to grant summary judgment on the equal protection portion of Plaintiff's claims against Hays and Sowers, because Plaintiff's equal protection claims are based on the same alleged harm as his retaliation claims. Plaintiff requested to brief this issue, and the Court granted Plaintiff's request. Plaintiff opposes an amendment granting summary judgment to Hays and Sowers on his equal protection claims arguing that: 1) the State has waived its right to de novo review of the equal protection claims and 2) dismissal of the retaliation claims should have no bearing on the dismissal of the equal protection claims. The Court addresses each argument in turn.

8

First, Rule 54(b) affords the Court the discretion to revise its previous summary judgment order, as "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  Where, as here, a grant of partial summary judgment is not a final judgment, a court is well within its discretion to revise its earlier decision.  *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976). ("[A] grant of partial summary judgment limited to the issue of [] liability [is] by [its] terms interlocutory . . . and where assessment of damages or awarding of other relief remains to be resolved have never been considered to be 'final' within the meaning of 28 U.S.C. § 1291.")

The Court next turns to the issue of whether dismissal of Plaintiff's equal protection claims is appropriate.  Upon further review of Plaintiff's Amended Complaint, Plaintiff has asserted four equal protection claims, not three.  The Court will therefore analyze Plaintiff's four equal protection claims and the corresponding allegations for each.

### 1. Plaintiff's First Equal Protection Claim

Plaintiff's Second Cause of Action alleges that on September 29, 2015, Hays retaliated against Plaintiff for using the prison grievance system by opening Plaintiff's legal mail outside of his presence and stealing the enclosed grievance filing brochure pertaining to Plaintiff's attempt to challenge his prison conditions. (Am. Compl. ¶ 32.)  In its November 20, 2020 Order, the Court concluded that there was insufficient evidence to establish that Hays was the person responsible for opening Plaintiff's legal mail and removing the grievance brochure from it and granted summary judgment to Hays on Plaintiff's retaliation claim. (ECF No. 169 at 2020–23.)

Plaintiff's Second Legal Claim similarly alleges that Hays retaliated against Plaintiff for using the prison grievance system but adds that Hays violated his First and Fourteenth Amendment

9

rights when he opened Plaintiff's legal mail outside of his presence and stole the grievance brochure out of it. (Am. Compl. ¶ 75.) Plaintiff further alleges that Hays's conduct was unlawful and discriminatory, injured his First Amendment rights and interfered with Plaintiff's ability to challenge the conditions of his confinement. (*Id.*)

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citing *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). But "the threshold element of an equal protection claim is disparate treatment." *Id.* As Plaintiff points out, to prevail on his equal protection claim, he must demonstrate that Hays's actions constitute disparate treatment of similarly situated individuals. *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015). Plaintiff cannot demonstrate that Hays's actions constituted disparate treatment of similarly situated individuals, because this Court has already determined, as a matter of law, that there is insufficient evidence that Hays took the alleged discriminatory action of opening Plaintiff's mail and stealing his grievance brochure. Plaintiff's equal protection claim therefore fails and warrants summary judgment.

### 2. Plaintiff's Second Equal Protection Claim

Plaintiff's next equal protection claim is listed as: Seventh Legal Claim: Retaliation & Equal Potection [sic] & Denial of Access. (Am. Compl. ¶ 80.) Here, Plaintiff alleges that Sowers retaliated against him, as an African American using the prison grievance system, by opening Plaintiff's legal mail outside of his presence and stealing legal materials out of the letter, thereby causing injury to Plaintiff's First and Fourteenth Amendment rights. (*Id.*) This alleged conduct is

10

similar to Plaintiff's earlier pled Sixth Cause of Action where he alleges that on January 14, 2016, Sowers opened his legal mail outside of his presence and stole his letter to his attorneys and copies of four disposition of grievance forms. (*Id.* at ¶ 48.)  Plaintiff contends that Sowers opened his legal mail in retaliation for Plaintiff's use of the grievance process. (*Id.* at ¶ 49.)

In its November 20, 2020 Order, the Court found that there was no competent evidence that Sowers opened or inspected Plaintiff's legal mail on January 14, 2016, or that he was aware of its contents, and granted summary judgment in favor of Sowers on this claim. (ECF No. 169 at 2031.)  It therefore follows that Sowers could not have denied Plaintiff equal protection under the law, because the Court has already determined, as a matter of law, that Sowers did not commit the alleged discriminatory conduct.  Thus, the equal protection portion of Plaintiff's Seventh Legal Claim fails and warrants summary judgment.

### 3. Plaintiff's Third Equal Protection Claim

Plaintiff's third equal protection claim is listed as: Eighth Legal Claim: Access to Courts/Retaliation/Equal Protection where he alleges that Sowers retaliated against him and denied him access to the courts when he destroyed Plaintiff's § 1983 lawsuit and that Sowers's racially motivated retaliation also denied Plaintiff's right to equal protection under the law. (Am. Compl. ¶ 80.)  This is similar to Plaintiff's Seventh Cause of Action where he alleges that Sowers retaliated against him by picking up his § 1983 civil rights lawsuit from the administration building on February 8, 2016 and destroying it. (*Id.* at ¶¶ 50–55.)  In its November 20, 2020 Order, the Court found, as a matter of law, that "there is no evidence that Defendant Sowers picked up or destroyed Plaintiff's Section 1983 lawsuit" and granted summary judgment to Sowers on this claim.  (ECF No. 162 at 1950, *adopted* by ECF No. 169 at 2031.)

As an initial matter, any claim regarding the alleged destruction of Plaintiff's § 1983 civil rights lawsuit by ODRC employees on February 8, 2016 is barred by the *Leaman* doctrine. Furthermore, the Court previously determined, as a matter of law, that Plaintiff's speculation that Sowers removed and later destroyed his § 1983 lawsuit is insufficient to establish that Sowers took the alleged action. Therefore, absent sufficient evidence to establish any retaliatory action, Plaintiff also cannot establish that Sowers's actions constituted disparate treatment, and his equal protection claim also fails for this reason.

### 4. Plaintiff's Fourth Equal Protection Claim

Plaintiff fourth equal protection claim is listed as: "Ninth Legal Claim: Denied Access to Court, Retaliation, and Equal Protection." (Am. Compl. ¶ 82.) Here, Plaintiff alleges that Sowers retaliated against him and denied his First Amendment right to access the courts by refusing to mail out Plaintiff's request for legal counsel and implementing a "Jim Crow" rule barring Plaintiff's access to the courts while incarcerated at MaCI. (*Id.*) Plaintiff further alleges that Sowers's racially motivated actions denied Plaintiff's Fourteenth Amendment right to equal protection. (*Id.*) This legal claim is similar to Plaintiff's Eighth Cause of Action where he alleges that Sowers retaliated against him and denied him access to the courts when Sowers withheld his outgoing legal mail for eight days and returned it with a note stating a fictious rule for mailing legal documents. (*Id.* at ¶¶ 56–61.)

After reviewing the record evidence, the Court determined that a genuine dispute of material fact remains concerning whether Sowers retaliated against Plaintiff due to the temporal proximity of Plaintiff's complaints against the MaCI mailroom and the totality of circumstances presented in the record, including evidence that Plaintiff's outgoing mail should not have been returned to him. (ECF No. 162 at 1953.) The Court further determined, however, that it could not

12

conclude that Sowers denied Plaintiff access to the courts by withholding his legal mail containing a request for appointment of counsel. (*Id.* at 1955.)

Here, Plaintiff claims that Sowers's actions were racially motivated, and that he was a known white supremacist who did not apply the fictitious "Jim Crow-style" mailing rule to any white inmates. (*See* Am. Compl.) Plaintiff has therefore adequately alleged that the government treated him "disparately as compared to similarly situated persons" *Ctr. for Bio-Ethical Reform,* 648 F.3d at 379, and "that the disparate treatment in question is the result of intentional and purposeful discrimination." *Robinson*, 615 F. App'x at 314 (6th Cir. 2015) (citation omitted). Additionally, the Court previously found at summary judgment that there was sufficient evidence that Plaintiff's legal mail should not have been withheld and returned to him. Thus, a genuine dispute of material fact remains as to whether Sowers intentionally discriminated against Plaintiff by withholding his mail and returning it to him with the alleged new rule. As such, the Court cannot grant summary judgment to Sowers on this claim, and it remains for trial.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings Pursuant to Order [Doc #204] (ECF No. 206) is **GRANTED**. Accordingly, Plaintiff's First and Seventh Causes of Action against Defendants Michelle Lovette, Cynthia Ricker, and Melanie Fultz are **DISMISSED WITH PREJUDICE**. The Court also amends its November 20, 2020 Order (ECF No. 169) to **GRANT** summary judgment to Defendant Jacob Hays on the equal protection portion of Plaintiff's Second Legal Claim (Am. Compl. ¶ 75) and to Defendant Aaron Sowers on the equal protection portions of Plaintiff's Seventh and Eighth Legal Claims (*Id.* at ¶¶ 80–81). These claims are hereby **DISMISSED WITH PREJUDICE**.

Plaintiff's remaining claims are his retaliation claim against Defendant Julia Chamberlin (Third Cause of Action), his retaliation claim against Sowers (Eighth Cause of Action), and his equal protection claim against Sowers (Ninth Legal Claim).

**IT IS SO ORDERED.**

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: May 24, 2022