IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LIONEL HARRIS,** | |
| Plaintiff, | Case No. 2:16-cv-888 |
| v. | Judge James L. Graham |
| **AARON SOWERS,** *et al.*, | Magistrate Judge Elizabeth A. Preston Deavers |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment filed by remaining Defendants Aaron Sowers and Julia Chamberlin ("Defendants"). (ECF No. 225.) For the reasons that follow, Defendants' Motion for Summary Judgment (ECF No. 225) is **GRANTED**.

**I.  BACKGROUND**

Plaintiff Lionel Harris, an Ohio inmate formerly incarcerated at the Madison Correctional Institution ("MaCI"), filed this action pursuant to 42 U.S.C. § 1983 against several MaCI employees. Plaintiff alleges, *inter alia*, that MaCI employees retaliated against him for using the institutional grievance process by intentionally destroying his incoming mail, withholding his outgoing legal mail, and denying Plaintiff equal protection under the Fourteenth Amendment. Plaintiff seeks declaratory and injunctive relief,[1] compensatory, and punitive damages.

On May 24, 2022, the Court dismissed several of Plaintiff's claims with prejudice. (ECF No. 210.)  Plaintiff's remaining claims are his retaliation claims against Chamberlin (Third Cause

---

[1] To the extent Plaintiff seeks declaratory and injunctive relief, his claims are now moot, as he is no longer incarcerated at the correctional facility that handled his mail. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (" . . . to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail.")

of Action) and Sowers (Eighth Cause of Action), and his equal protection claim against Sowers (Ninth Legal Claim).

At the parties' July 6, 2022, telephone status conference, the Court invited additional summary judgment briefing. (ECF No. 224.) On August 5, 2022, Defendants filed their motion for summary judgment. (ECF No. 225.) On August 26, 2022, Plaintiff filed his response in opposition. (ECF No. 226.) On September 9, 2022, Defendants filed their reply brief. (ECF No. 228.) Defendants' motion is fully briefed and ripe for adjudication.

## II. STANDARD OF REVIEW

Defendants have moved for summary judgment on each of Plaintiff's remaining claims under Federal Rule of Civil Procedure 56. Under Rule 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt,* 586 F.3d 459, 465 (6th Cir. 2009). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

A district court considering a motion for summary judgment "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum,* 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *see Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009). "The central issue is 'whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Revis,* 489 F.3d at 279–80 (quoting *Anderson,* 477 U.S. at 251–52).

### III. DISCUSSION

#### A. Plaintiff's Retaliation Claim Against Sowers (Eighth Cause of Action)

Sowers began working as an MaCI mailroom screener on January 11, 2016. (Sowers Aff. ¶ 3, ECF No. 117-8 at 1168.) On January 15, 2016, Plaintiff filed a grievance against the MaCI mailroom claiming that on January 14, 2016, someone processed his legal mail as regular mail and opened his legal mail outside of his presence in violation of prison policy.[2] (ECF No. 57-1 at 566.) Under the applicable prison mail procedures, "[a]ll inmate mail, other than legal mail, shall be opened and inspected for the presence of cash, checks, money order, and/or contraband." (*Id.* at 569.) On February 4, 2016, Plaintiff's grievance was granted with the explanation that "A. Sowers . . . admitted that he honestly missed your legal mail and processed it with regular mail." (*Id.* at 567.)

On February 8, 2016, Plaintiff attempted to mail a three-page motion for appointment of counsel to this Court. (Am. Compl. ¶ 56.) On February 16, 2016, Plaintiff's legal mail was returned to him with a note stating, "Not proper procedure[.] Legal mail mail outs are 1:30 pm – 2:30 pm Mon – Fri in Zone B rec[.]" (ECF No. 57-1 at 581.) Sowers admits that he "mistakenly wrote the incorrect hours for sending inmate mail on a Post-It Note" because he "was working on two separate compounds." (Sowers Aff. ¶ 9.) Sowers also claims that he returned Plaintiff's legal

---

[2] The Ohio Department of Rehabilitation and Correction (the "ODRC") has developed policies for handling inmate mail. ODRC policy 75-MAL-01 provides that "[a]ll incoming mail, except legal mail, shall be processed in an area located outside of the facility or in an area of the facility designated by the managing officer and approved by the appropriate regional director to minimize possible exposure." "[L]egal mail" is defined as "[m]ail addressed to an inmate clearly bearing the return address of an attorney-at-law, a public service law office, a law school legal clinic, court of law, or the Correctional Institution Inspection Committee [ ]." *See* ODRC policy 75-MAL-01.

3

mail to him, because Plaintiff did not follow the proper cash slip procedure for sending mail. (*Id.* at ¶ 11.)

Plaintiff alleges that Sowers retaliated against him for using the prison grievance procedure by refusing to mail his motion for appointment of counsel.[3] (*Id*. at ¶ 82.) The record is silent on just what purpose this motion asked the Court to appoint counsel for. It was not until May 31, 2017, that Plaintiff actually filed a motion for appointment of counsel (ECF No. 34), and that was for the purpose of representing him in the instant case, which was filed on September 15, 2016. (ECF No. 1.) Plaintiff seeks compensatory and punitive damages against Sowers and claims that Sowers caused him "severe emotional distress." (*Id*.)

To establish a First Amendment retaliation claim, Plaintiff must show that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by his protected conduct. *Berkshire v. Dahl,* 928 F.3d 520, 531 (6th Cir. 2019).

Here, the parties agree that Plaintiff engaged in protected conduct by utilizing the prison grievance process. An inmate has a First Amendment right to file non-frivolous grievances but to state a cognizable constitutional claim, "the inmate must not only show he exercised this First Amendment right, but also must demonstrate that adverse actions were taken against him because

---

[3] Though Plaintiff's Eighth Cause of Action also claims that Sowers denied Plaintiff "access to the courts when he refused to [] mail Plaintiff's legal mail requesting counsel" (Am. Compl. ¶ 61), the Court previously noted that an inmate's right of access to the courts "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X,* 175 F.3d at 391. (ECF No. 169 at 2015.) Plaintiff's motion for appointment of counsel does not fall into any of these categories, and therefore does not constitute a protected First Amendment right. *See Frisby v. Cal. DOJ*, No. 5:19-cv-01249-DSF (MAA), 2019 U.S. Dist. LEXIS 212929, at *13 (C.D. Cal. Dec. 9, 2019) (determining that a "motion for appointment of counsel—do[es] not appear to be the type[] of petition[] protected by the First Amendment.") On November 20, 2020, the Court granted summary judgment on Plaintiff's "Eighth Cause of Action – denial of access to courts claim against Sowers." (*Id.* at 2032.)

4

he filed the grievances." *Moes v. Milton*, No. 4:06 CV 490, 2006 U.S. Dist. LEXIS 29383, at *16 (N.D. Ohio May 15, 2006) (citing *Noble v. Schmitt,* 87 F.3d 157, 162 (6th Cir. 1996) and *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

Defendants move for summary judgment arguing that Plaintiff cannot meet the adverse action prong of his retaliation claim, because the alleged adverse action is so de minimis that it does not rise to the level of a constitutional violation. Plaintiff's evidentiary burden at this stage is "to establish the factual basis for his claim that the retaliatory acts amounted to more than a de minimis injury." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

An adverse action is "one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 395 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). To be actionable, the effect on the plaintiff's speech "need not be great." *Id.* at 397 (cleaned up). Examples of sufficiently adverse actions meeting the "person of ordinary firmness" standard include "initiating a retaliatory transfer to another prison when it will result in foreseeable negative consequences to the prisoner, threatening to impose disciplinary sanctions, issuing major misconduct reports that could result in loss of disciplinary credits, and threatening the use of physical force." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (cleaned up). While the test uses an "objective" standard, "the definition of adverse action is not static across contexts." *Thaddeus-X*, 175 F.3d at 398. "[N]ot every objectionable act directed at a prisoner constitutes adverse action sufficient to deter a person of ordinary firmness from engaging in protected activities." *Reynolds-Bey,* 428 F. App'x at 503.

The Sixth Circuit has also observed that "since § 1983 is a tort statute, we must be careful to ensure that real injury is involved, lest we 'trivialize the First Amendment' by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually

5

deterred." *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) (quoting *Thaddeus-X*, 175 F.3d at 394); *see also United States v. Budd*, 496 F.3d 517, 530 (6th Cir. 2007) ("[I]njuries must be more than *de minimis* to support a constitutional violation."); *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (observing that allowing plaintiffs to bring retaliation claims for "*any* adverse action no matter how minor" would "trivialize" the First Amendment). "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse." *Thaddeus-X*, 175 F.3d at 398.

Moreover, although "actual deterrence on the part of the plaintiff is not necessary to state a claim of an adverse action," *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 728 (6th Cir. 2010) the fact that a plaintiff "was not deterred or chilled in the exercise of his First Amendment rights" can support the conclusion that the conduct at issue does not amount to adverse action. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 585 (6th Cir. 2012).

Here, the undisputed record evidence reflects that Plaintiff was not deterred or chilled in exercising his First Amendment right to file grievances. The day after Sowers returned Plaintiff's legal mail with the Post-It Note, Plaintiff filed an informal complaint with mailroom supervisor, Lieutenant Williams, on February 17, 2016. (ECF No. 57-1 at 584.) On February 26, 2016, Williams acknowledged that "it is apparint [sic] that there is some confusion [regarding] the outgoing Legal mail procedures that I am currently looking into." (*Id.*)

On March 4, 2016, Plaintiff filed a grievance noting Williams's response and "requesting that the screener responsible (Sowers or whomever)" for the "interference with my outgoing and incoming legal mail be fired immediately" and that he be "permitted to mail out legal mail through the regular mailbox without interference or delay." (*Id.* at 585.) On March 22, 2016, Plaintiff's grievance was granted. (*Id.* at 586.) The inspector found that Sowers's Post-It Note was incorrect,

6

and that Plaintiff's mail "should not have been sent back to" him. (*Id.*) The record further reflects that the disposition of Plaintiff's grievance was that the issues in the mailroom concerning Plaintiff's mail and legal mail would be addressed. (*Id.*)

Plaintiff was transferred to another correctional facility sometime in early April 2016 and did not attempt to send any additional mail before leaving MaCI. (ECF No. 1 at 4; ECF No. 57-1 at 510, 590.) The Court's docket also reflects that Plaintiff did not file the instant case until September 15, 2016. (ECF No. 1.) The magistrate judge later appointed counsel, and Plaintiff remains represented by counsel to-date. (ECF No. 178.)

Although "confiscation of legal mail can constitute an adverse action . . . a temporary delay in the processing of legal mail would not deter a person of ordinary firmness from continuing to" pursue his First Amendment rights. *Perry v. Rousseau*, No. 21-2645, 2022 U.S. App. LEXIS 12403, at *7 (6th Cir. May 6, 2022) (citing *Bell*, 308 F.3d at 607). Here, Plaintiff claims that he was prevented from filing a motion for appointment of counsel, because "Sowers . . . made it physically impossible for Plaintiff to mail out any legal mail" while incarcerated at MaCI, and he treated Sowers's note "as a very credible threat." (Am. Compl. ¶ 60.)

Though "threats alone can constitute an adverse action if the threat is capable of deterring a person of ordinary firmness from engaging in protected conduct," *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010), "courts have generally held that vague threats of unspecified harm do not constitute adverse actions." *Snelling v. Gregory,* No. 1:17-cv-P41, 2017 WL 2602591, at *3 (W.D. Ky. June 14, 2017) (collecting cases); *see also Hardy v. Adams,* No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Kyle v. Skipper,* No. 1:19-cv-353, 2019 WL 3729384, at *5 (W.D. Mich. Aug. 8, 2019) ("A specific threat of harm may satisfy the adverse-

7

action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights" and "[t]he threat Plaintiff alleges— "you will regret it"—is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct") (cleaned up).

Even construing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court finds as a matter of law that Sowers's note does not constitute a threat, as Sowers's communication of incorrect mailing procedures did not threaten Plaintiff with any potential harm. *See Hardy*, 2018 WL 3559190, at *3; *Kyle,* 2019 WL 3729384, at *5; *Snelling,* 2017 WL 2602591, at *3; *see also Dahlstrom v. Butler,* No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("[T]he conduct at issue here is a general threat to 'get' a prisoner who files a grievance on [Defendant] Krause and 'steps out of line'" and "Krause's threat is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct"). Sowers's alleged threat therefore does not rise to the level of an adverse action, because any alleged harm is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct.

Moreover, while Plaintiff remained incarcerated at MaCI, Sowers admitted he made a mistake, and prison officials notified Plaintiff that Sowers's note was incorrect and that he should have been permitted to send his legal mail. "'[W]hen legal mail is inadvertently lost or misdirected, no constitutional violation occurs.'" *Sims v. Landrum*, 170 F. App'x 954, 956 (6th Cir. 2006) (quoting *Simkins v. Bruce,* 406 F.3d 1239, 1242 (10th Cir. 2005)). As the record demonstrates that Sowers misdirected Plaintiff's mail by returning it to him, the Court finds as a matter of law that no constitutional violation occurred when Sowers returned Plaintiff's legal mail to him with the Post-It Note.

8

The Court further concludes that "a person of ordinary firmness" would not be deterred or chilled from engaging in the protected conduct of filing grievances as a consequence of Sowers's conduct. This conclusion is supported by the undisputed fact that Plaintiff was not deterred or chilled in the exercise of his First Amendment right to file grievances against prison officials. *See Wurzelbacher,* 675 F.3d at 585 (concluding that a person of ordinary firmness would not be chilled by the defendant's alleged adverse action because the plaintiff was not chilled in the exercise of his First Amendment rights); *Hogan Field Hangars, LLC v. Butler Cty. Bd. of Comm'rs*, No. 1:12-CV-388, 2014 U.S. Dist. LEXIS 5215, at *25 (S.D. Ohio Jan. 15, 2014) ("Although a plaintiff is not required to show an actual chilling of his protected expression, the fact that Hogan admits that his criticizing and petitioning activities were not actually chilled indicates that the adverse actions alleged are insufficient to chill a person of ordinary firmness.")

As such, any alleged harm to Plaintiff in the instant case "is too minimal to be constitutionally cognizable." *Mezibov,* 411 F.3d at 722; *see also Anders v. Cuevas*, 984 F.3d 1166, 1177 (6th Cir. 2021) (cleaned up) (finding that "[m]erely 'inconsequential' actions that cause a 'de minimis' injury are not adverse actions."). Since Plaintiff fails to meet his evidentiary burden regarding the adverse action element of his First Amendment retaliation claim against Sowers, the Court grants summary judgment to Sowers on the retaliation portion of Plaintiff's Eighth Cause of Action as a matter of law.

**B. Plaintiff's Equal Protection Claim Against Sowers (Ninth Legal Claim)**

Defendants also move for summary judgment on Plaintiff's remaining equal protection claim alleging that Sowers denied Plaintiff's Fourteenth Amendment "right to equal protection and caused Plaintiff severe emotional distress." (Am. Compl. ¶ 82.)

9

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citing *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). But "the threshold element of an equal protection claim is disparate treatment." *Id.* To prevail on his equal protection claim, Plaintiff must demonstrate that Sowers's actions constituted disparate treatment of similarly situated individuals. *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015).

Defendants argue that Plaintiff has failed to meet his evidentiary burden and has not produced any evidence that he was treated differently than other inmates. The Court agrees. Plaintiff claims that Sowers's actions were racially motivated, and that he was a known white supremacist who did not apply the fictitious "Jim Crow-style" mailing rule to any white inmates (*See* Am. Compl.) but fails to point to any evidence that Sowers treated him "disparately as compared to similarly situated persons." *Ctr. for Bio-Ethical Reform,* 648 F.3d at 379. In his response in opposition to Defendants' motion, Plaintiff merely states that he has "alleged actual injury that was caused by the violation of his Fourteenth Amendment right to equal protection under the law." (ECF No. 226 at 2386.) This conclusory and unsubstantiated assertion is insufficient to defeat summary judgment. *Jones v. City of Franklin,* 677 F. App'x 279, 282 (6th Cir. 2017).

The Court therefore finds as a matter of law that Plaintiff has not met his burden at summary judgment to put forth evidence creating a genuine dispute of material fact that Sowers treated him "disparately as compared to similarly situated persons" and grants summary judgment

to Sowers on the equal protection portion of Plaintiff's Ninth Legal Claim. *See Arendale v. City of Memphis,* 519 F.3d 587, 605 (6th Cir. 2008) (a plaintiff cannot survive summary judgment based on conjecture or conclusory allegations).

### C. Plaintiff's Retaliation Claim Against Chamberlin (Third Cause of Action)

Plaintiff's Third Cause of Action alleges that after filing grievances against MaCI mailroom employees, Chamberlin, who supervised the mailroom, "intentionally destroyed Plaintiff's legal materials" and "removed all [] traces of its prior evidence" in retaliation for Plaintiff's use of the prison grievance system "and to cover up the fact that her subordinates [] withheld Plaintiff's legal materials for 11 days – in direct violation of prison policy."[4] (Am. Compl. ¶ 39.) Plaintiff alleges that these legal materials included, *inter alia,* Plaintiff's trial notes, a declaration from a deceased bailiff, and legal research on how to file for summary judgment. (*Id.* at ¶ 35.) Chamberlin denies Plaintiff's allegations. (Chamberlin Aff., ECF No. 152-8.)

Plaintiff claims that Chamberlin's actions deprived him of the ability to challenge his criminal conviction and conditions of confinement in court. (*Id.* at ¶ 77.) Plaintiff further claims that Chamberlin's actions caused him "extreme emotional distress." (*Id.*)

On September 14, 2015, Plaintiff received five of the forty-one pages his wife mailed to him on September 1, 2015. (ECF No. 57-1 at 543.) The Ohio Department of Rehabilitation and Correction's ("ODRC") Policy 75-MAL-01 only permits inmates to receive five pages of copied materials at one time. (McCrary Aff., ECF No. 139-6.) Plaintiff claims that MaCI received the forty-one-page letter on September 3, 2015, and that under ODRC policy, "incoming and outgoing

---

[4] This Court previously granted summary judgment to Chamberlin's subordinate, Mary McCrary, on Plaintiff's claim that McCrary retaliated against him for filing complaints against the mailroom by withholding his mail for at least eleven days in violation of ODRC Policy 75-MAL-01. (ECF No. 169 at 2032.)

11

letters shall be held for no more than 48 hours." (*Id.*) On September 16, 2015, Plaintiff filed an informal complaint against the mailroom. (*Id.*)

On September 21, 2015, Chamberlin responded to Plaintiff's informal complaint stating, "Mailroom staff denied holding your mail from you. You are only allowed to receive 5 pages of copied material (no larger than 8 ½ x 11). This is not considered legal mail as it wasn't sent from/by [a] legal establishment." (*Id.*) Under ODRC policy, "[L]egal mail" is defined as "[m]ail addressed to an inmate clearly bearing the return address of an attorney-at-law, a public service law office, a law school legal clinic, court of law, or the Correctional Institution Inspection Committee." *See* ODRC policy 75-MAL-01. On September 22, 2015, Plaintiff filled out a Notice of an Unauthorized Item Received and requested that the excess thirty-six pages be returned to his wife. (*Id.* at 544–45.)

To prevail on his First Amendment retaliation claim against Chamberlin, Plaintiff must show that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by his protected conduct. *Berkshire,* 928 F.3d at 531.

Here too, the parties agree that Plaintiff's protected conduct was the exercise of his First Amendment right to file grievances. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf.") Defendants move for summary judgment arguing that Plaintiff cannot meet the second prong of his retaliation claim that he suffered an adverse action.

Here, Plaintiff alleges that the loss of his contraband mail injured him by depriving him of the ability to challenge his criminal conviction and conditions of confinement in court. It is well established that inmates have a constitutional right of access to the courts, and that prison officials

12

are prohibited from interfering with an inmate's attempt to file legal documents. *Lewis v. Casey,* 518 U.S. 343, 350 (1996); *Bounds v. Smith,* 430 U.S. 817, 821 (1977). But a deprivation of his First Amendment right to access the courts is not the claim Plaintiff makes against Chamberlin in the instant case.

Even if Plaintiff had alleged a denial of access claim against Chamberlin, "[a] prison official may be held liable for the deprivation of th[e] First Amendment right [to access courts] only to the extent that his or her actions prevented a prisoner from pursuing or caused the rejection of specific non-frivolous direct appeals, habeas corpus applications, or civil rights actions." *Moes*, 2006 U.S. Dist. LEXIS 29383, at *12 (citing *Lewis,* 518 U.S. at 351 and *Hadix v. Johnson,* 182 F.3d 400, 405 (6th Cir. 1999)). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration." *Lewis,* 518 U.S. at 355. Thus, Plaintiff must show actual injury, *Harbin-Bey v. Rutter,* 420 F.3d 571, 578 (6th Cir. 2005), that is, he must demonstrate that a nonfrivolous legal claim was frustrated or impeded, *see Lewis v. Casey,* 518 U.S. at 353.

Here, Plaintiff has not shown that a nonfrivolous legal claim was frustrated or impeded. Instead, he makes the conclusory and unsubstantiated assertion that he was prevented from doing so,[5] and this is insufficient to defeat summary judgment. *Jones,* 677 F. App'x at 282. Because Plaintiff has failed to demonstrate that a nonfrivolous legal claim was frustrated or impeded, the Court finds as a matter of law that Plaintiff has failed to demonstrate that he suffered an actual injury.

---

[5] The Court takes judicial notice of Plaintiff's filings in *State ex rel. Harris v. Turner,* 160 OhioSt.3d 506, 2020-Ohio-2901 and *State ex rel. Harris v. Hamilton Cty. Clerk of Courts,* 2022-Ohio-477. *See Lynch v. Leis*, 382 F.3d 642, 647, n.5 (6th Cir. 2004).

The Court additionally finds that Plaintiff cannot meet his evidentiary burden to establish that Chamberlin took any adverse actions against him, as he cannot show that Chamberlin mishandled his contraband mail. The undisputed record evidence reflects that the inspector found that mailroom staff "did not follow proper procedure and process in processing [Plaintiff's] Unauthorized Items" and did not identify Chamberlin as the person responsible for the misplaced contraband mail. (ECF No. 57-1 at 549.) Furthermore, "[f]or an individual supervisor or employer to be found liable for the acts of an employee under § 1983, the acts of the employee must have been in accordance with some official policy or custom or when it can be shown that the supervisor encouraged the specific misconduct or in some way directly participated in it." *Moes*, 2006 U.S. Dist. LEXIS 29383, at *17 (collecting cases). Here, Plaintiff has not made such a showing, and Chamberlin denies under oath Plaintiff's allegation that she "intentionally destroyed the Nuisance Contraband." (Chamberlin Aff., ECF No. 117-7.) Plaintiff offers no evidence to rebut Chamberlin's sworn affidavit.

The Court therefore finds as a matter of law that Plaintiff has not met his burden at summary judgment to create a genuine dispute of material fact that Chamberlin took an adverse action against him and grants summary judgment to Chamberlin on Plaintiff's Third Cause of Action.

**IV. CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 225) is **GRANTED**. Accordingly, the retaliation portion of Plaintiff's Eighth Cause of Action against Sowers, his Third Cause of Action for retaliation against Chamberlin, and his Ninth Legal Claim for denial of equal protection against Sowers are **DISMISSED WITH PREJUDICE**. The Clerk is instructed to enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

/s/ James L. Graham<br>JAMES L. GRAHAM<br>United States District Judge

DATE: November 16, 2022